**Affirmed and Opinion filed August 16, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00777-CR

### FELIX AMADOR, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1269365**

## O P I N I O N

A jury convicted appellant Felix Amador of aggravated robbery and assessed his punishment at eighteen years' imprisonment. In his first two issues on appeal, appellant contends that the trial court erred in permitting a police officer to testify regarding complainant's out of court statements because such testimony violated the right to confront witnesses and constituted inadmissible hearsay. In his third issue, appellant challenges the sufficiency of the evidence to sustain the verdict. We affirm.

*Background*

According to their testimony at trial, Ruth and Randy Blalock arrived together at their workplace on the morning of June 9, 2010 between 6:40 and 6:45 a.m. Milton Flores, a co-worker of Ruth and Randy, pulled into the parking lot in his vehicle immediately behind them. Flores, the complainant, died prior to trial but not from injuries sustained during the alleged robbery.

Randy testified that he got out of his vehicle, retrieved some items from his backseat, and headed towards the front door of the building. Ruth stayed in the vehicle for a moment to apply makeup. Randy turned to see where Flores was, because typically Flores would be waiting at the front door for Randy to open it. Randy saw Flores standing by Flores's car with a Ford F-150 truck parked behind him at an angle. Pointed out of the window of the truck was a shotgun directed at Flores. Randy observed someone he described as thin, not very tall, and Hispanic get out of the passenger side of the truck. Concerned for his safety, Randy stepped behind a column and repeatedly and loudly said to Ruth "gun" until she looked and saw the gun pointed at Flores.

Ruth testified that after hearing Randy say "gun," she got out of her vehicle and moved to where she could observe "the occurrence." She observed that the passenger who exited the Ford F-150 held a semiautomatic handgun and that there was a shotgun pointed out of the truck's window. Ruth heard Flores say, "I can't believe it's you, you would do this right here in front of everybody." Ruth also heard the driver of the truck tell Flores he needed to get down on the ground and that he had a choice between "his life or his car." Ruth was able to see the faces of the two men with the truck and identified appellant in the courtroom as the driver. Ruth had identified a different man as the driver on the day of the incident when police presented her with a photo spread, but she explained at trial that she could identify him more accurately in person.

Randy further testified that Ruth startled the passenger with the handgun when he noticed her standing near him. Flores then took that opportunity to run towards Randy. Randy described Flores as flustered, scared, and talking excitedly. Specifically, Flores

2

said, "I can't believe he did that. I know him. That was Felix." After the gunmen drove away, Ruth called 911.

At approximately 6:45, Flores called his wife, Lina Ceron. Ceron testified that a very upset Flores told her over the phone that "Felix" had arrived at his job, pulled out a gun, and demanded his car or his life. Ceron further testified that appellant was the only person she and Flores knew by the name "Felix." She also explained that Flores and appellant "had been having trouble since high school" and that there was "bad blood" between them.

Ruth testified that the police arrived approximately 10 to 15 minutes after she called 911. The responding police officer, Officer George Grifno, testified that Flores told him that one of the gunmen was Felix Amador and that they had gone to school together. Defense counsel objected to this testimony as hearsay. The State did not specifically ask Officer Grifno whether or not Flores appeared excited or under duress at the time the statements were made.

Appellant's ex-girlfriend, Erin Allender, testified that she picked appellant up from jail in late-June 2010. She then accompanied him to an IHOP restaurant where he told her that he "went to go hit a lick, it went wrong, Milton recognized him." She explained that "to hit a lick" is to either break into somebody's car or rob them.

*Testimonial Hearsay*

In his first issue, appellant contends that the trial court erred in admitting Officer Grifno's testimony regarding Flores's out-of-court statements because such testimony violated appellant's right to confrontation. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the United States Supreme Court spelled out the parameters of this right and specifically held that it was a violation of the Sixth Amendment for a court to admit testimonial statements of a witness who did not appear

3

at trial unless that witness was unavailable to testify and the defendant was afforded a prior opportunity for cross-examination. 541 U.S. 36, 68 (2004).[1] The Court explained that generally a statement should be considered "testimonial" if it constitutes a solemn declaration made for the purpose of establishing some fact. *Id*. at 51. While the Court declined in *Crawford* to provide a comprehensive definition, it advised that certain classes of "core" statements should be regarded as testimonial, including: (1) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and (2) statements taken by police officers "in the course of interrogations." *Id*. at 51-52.

In *Davis v. Washington*, the Court clarified that not all statements taken by police officers are testimonial.

> Statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822 (2006).[2] The Court went on in *Michigan v. Bryant* to explain that "[t]o determine whether the 'primary purpose' of an interrogation is 'to enable police assistance to meet an ongoing emergency,' which would render the resulting statements nontestimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." 131 S. Ct. 1143, 1156 (2011)[3]; *see also Coronado v. State*, 351 S.W.3d 315, 324 (Tex. Crim. App. 2011) ("Under *Davis* [and

---

[1] In *Crawford,* the defendant's wife had given a tape-recorded statement to the police the night of the incident. At trial, defendant claimed marital privilege.

[2] The facts of *Davis* itself involved admission of statements made during a telephone call to 9-1-1. 547 U.S. at 826-27. The Court determined that such statements were nontestimonial because not "designed primarily to establish or prove some past fact, but to describe current circumstances requiring police assistance"; therefore, admission did not violate the right to confrontation. *Id*. at 827 (internal quotation marks omitted).

[3] *Bryant* involved statements made by the dying victim to police officers who discovered him. 131 S. Ct. at 1150.

*Bryant*,] the primary focus in determining whether an out-of-court statement is 'testimonial' is on the objective purpose of the interview or interrogation, not on the declarant's expectations."). The *Bryant* court also emphasized that for an ongoing emergency to exist, there does not have to be a continuing threat to the original victim but instead there could be a continuing threat to the general public or even the police responding to the situation after the initial threat to the first victim had been neutralized. *Id*. at 1156, 1158.

We have also previously identified the following principles as useful in determining whether particular statements are testimonial: (1) testimonial statements are official and formal in nature, (2) interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police, (3) spontaneous statements to the police are not testimonial, and (4) responses to preliminary questions by police at the scene of the crime while police are assessing and securing the scene are not testimonial. *Dixon v. State*, 244 S.W.3d 472, 482 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing *Ruth v. State*, 167 S.W.3d 560, 568–69 (Tex. App.—Houston [14th Dist.] 2005 pet. ref'd)). We review a constitutional legal ruling such as this under a de novo standard of review; however, we defer to the trial court on issues of historical fact. *Id*. at 482.

Here, the State concedes that the complainant was not available to testify and that appellant had no opportunity to cross-examine him; however, the State argues that complainant's statements were obtained by Officer Grifno in order to address an ongoing emergency and thus were not testimonial. We agree.

The statements in question were made to Officer Grifno as he was responding to a report of an armed robbery while at the scene of the crime and shortly after the crime had occurred. Grifno testified that he arrived at the scene within minutes of receiving the call. He said that he had reason to believe at the time that armed assailants were still in the area and his primary goal was to "[p]ut out as much information about the suspect as [he could] over the radio for any other officers in the area." He intended to make sure

5

that "no other laws [were] broken" and no one else was "put at risk." After obtaining a description of the assailants from complainant, Grifno put out a notice for other officers in the area to be on the lookout for two Hispanic males in a Ford F-150. Grifno also testified that complainant stated he was afraid that at the time of the robbery, he was going to be shot.

Grifno's testimony regarding the circumstances surrounding complainant's statements supports the conclusion that the primary purpose of obtaining the statements was to respond to an ongoing emergency. Consequently, the statements were nontestimonial, and their admission did not violate the confrontation clause. *See, e.g., Vinson v. State*, 252 S.W.3d 336, 339-40 (Tex. Crim. App. 2008) (holding identification of assailant while officer was still "assessing the situation" and before defendant was secured in patrol car was nontestimonial); *Wilson v. State*, 296 S.W.3d 140, 147-48 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (holding descriptions of offense and suspect were nontestimonial when given at the scene after burglary suspect had fled). We overrule appellant's first issue.

## *Excited Utterance*

In his second issue, appellant asserts the trial court erred in admitting Officer Grifno's testimony about the complainant's out-of-court statements over a hearsay objection. The State argues in response that the testimony was admissible under the excited utterance exception to the hearsay rule.[4]

---

[4] It is unclear if appellant's hearsay objection to a question asking who complainant said tried to rob him was intended to cover testimonial hearsay only under the confrontation clause or also under general hearsay under the Texas Rules of Evidence. We will, however, consider appellant's general hearsay complaint in the interests of completeness and justice.

Appellant suggests that the trial court erred in admitting the testimony regardless of whether it was an excited utterance because the State did not raise the excited utterance exception as a ground for admission at trial. We have previously held, under similar circumstances, that the proponent of hearsay testimony is not required to specifically state an exception to the hearsay rule in order for the overruling of a hearsay objection to be affirmed based on the exception. *See Ortega v. State*, 126 S.W.3d 618, 620-22 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see also* 43A George E. Dix et al., *Texas Practice Series: Criminal Practice and Procedure* § 53:119 (3d ed.) (discussing *Ortega*).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. Rule 801(d). Hearsay is generally not admissible unless it fits one of the exceptions provided in the Texas Rules of Evidence or other rule or statute. *Id*. 802. For the excited utterance exception to apply, three requirements must be shown: (1) the statement must be the product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous, (2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent, and (3) the statement must relate to the circumstances of the occurrence preceding it. *See id*. 803(2); *Kesaria v. State*, 148 S.W.3d 634, 642 (Tex. App.—Houston [14th Dist.] 2004), *aff'd*, 189 S.W.3d 279 (Tex. Crim. App. 2006). The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial courts' discretion. *Kesaria*, 148 S.W.3d at 641. An abuse of discretion occurs "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Id*. (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)).

The critical determination in regard to the excited utterance exception is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time he or she made the statement. *Tyler v. State*, 167 S.W.3d 550, 555 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). We may consider the time elapsed between the event and the statement and whether the statement was in response to questioning, but these factors are not necessarily dispositive. *Id*. Ultimately, we must determine whether the statement was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. *Id*.

Evidence demonstrated that shortly before complainant made the statement recounted by Grifno, complainant had been the victim of an armed robbery at gunpoint and, according to the testimony of the Blaylocks and complainant's wife, this experience caused complainant to be very excited. It is also clear that the statement was related to

7

the circumstances of the occurrence preceding it; in the statement, complainant identified appellant as one of the armed robbers.

While Grifno did not specifically testify regarding complainant's demeanor at the time complainant made the recounted statement, evidence indicated Grifno arrived at the scene and received the statement shortly after the startling event itself. *See, e.g., Jackson v. State*, 110 S.W.3d 626, 634 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding 15 to 20 minutes after aggravated assault with a deadly weapon was not too long for the excited utterance exception to apply). Grifno also testified that complainant indicated the event itself frightened him. And as stated, the Blaylocks and complainant's wife described complainant as being in an excited state after the robbery attempt and immediately before Grifno arrived and questioned complainant. Under these circumstances, the trial court did not abuse its discretion in admitting the hearsay testimony under the excited utterance exception.

Furthermore, even if the trial court had committed error in this regard, such error would have been harmless. Under Texas Rule of Appellate Procedure 44.2(b), we must disregard non-constitutional error that does not affect a defendant's "substantial rights," *i.e.*, if upon examining the record as a whole, there is a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. Tex. R. App. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). The error of admitting hearsay will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). If the error had no or only a little influence on the verdict, it is harmless. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

Similar statements to those recounted by Officer Grifno were also testified to by the Blaylocks and complainant's wife. While the testimony of Officer Grifno may potentially have carried more weight with the jury because he is a member of law enforcement, there was considerable other evidence of appellant's guilt. Ruth Blaylock

8

identified appellant in court as one of the robbers. Complainant's wife testified complainant and appellant knew each other and did not get along. Appellant's ex-girlfriend testified that he told her the robbery went wrong because "Milton recognized him." Considering all of the evidence presented, the out-of-court statements recounted by Grifno likely had little influence on the verdict. Therefore, even if admission of the out of court statements was error, it was harmless error. Accordingly, we overrule appellant's second issue.

*Sufficiency of the Evidence*

In his third issue, appellant asserts that the evidence was insufficient to support the jury's verdict. When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether a rational jury could find the essential elements of the crime beyond a reasonable doubt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This court may not substitute its judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. *Id.* We review the evidence to ensure it actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

To support a conviction of aggravated robbery as charged in this case, the evidence must have demonstrated appellant committed a robbery while using or exhibiting a deadly weapon. *See* Tex. Pen. Code § 29.03. Among other possibilities, a person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02(a).

Under this issue, appellant argues that the failure of any witness to positively identify him as participating in the robbery prior to the day of trial undermines the verdict to such a degree that the evidence was insufficient to sustain it. Appellant specifically emphasizes that Ruth Blaylock—the only person to identify appellant as a perpetrator in court—was unable to identify appellant in a "photo spread" shortly after the robbery. However, Ruth explained at trial that she was better able to recognize appellant in person

9

than she had been in the photo spread. Also, any inconsistency in Ruth's identification is a matter to be weighed by the jury in its determination of guilt and innocence and not something that by itself renders the evidence insufficient. *See Fite v. State*, 60 S.W.3d 314, 318 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

Moreover, as discussed under the previous issue, there was considerable evidence indicative of appellant's guilt. Four different witnesses testified that the complainant identified someone he knew as "Felix" as one of the perpetrators, one of those witnesses (Grifno) specifically recounted complainant identifying "Felix Amador" as a perpetrator, and complainant's wife explained that appellant was the only person she and her husband knew by the name "Felix." Appellant's ex-girlfriend also testified that they had a conversation where he told her that he "went to hit a lick" and the reason it went wrong was because "Milton recognized him." Based on this evidence, a rational jury could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, we hold the evidence legally sufficient to show that the appellant committed aggravated robbery and affirm the jury's finding.

Having overruled each of appellant's issues, we affirm the trial court's judgment.


/s/     Martha Hill Jamison
          Justice



Panel consists of Justices Boyce, Christopher, and Jamison.
Publish — TEX. R. APP. P. 47.2(b).

10