

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BRYAN ANTHONY WEBB, | § | No. 08-11-00126-CR |
| Appellant, | § | Appeal from the |
| v. | § | 372nd Judicial District Court |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC#1220847R) |

## **O P I N I O N**

Bryan Anthony Webb ("Webb" or "Appellant") appeals his conviction on two counts of Engaging in Organized Criminal Activity, to-wit: Aggravated Robbery, for which he was sentenced to thirty (30) years' confinement in the Institutional Division of the Texas Department of Criminal Justice. [1]  In his sole issue, Webb asserts that the evidence is legally insufficient to sustain the first degree engaging in organized crime convictions and prays that the conviction be reversed and an acquittal rendered.   For the reasons set out below, we affirm.

**PROCEDURAL HISTORY**

---

[1] This case was transferred from the Second Court of Appeals to this Court pursuant to a docket equalization order entered by the Texas Supreme Court.  *See* TEX.GOV'T CODE ANN. § 73.001 (West 2005).  We have applied precedent of the Fort Worth Court of Appeals.  *See* TEX.R.APP.P. 41.3.

On November 18, 2010, an eleven-count indictment[2] was issued against Webb by the Grand Jury of Tarrant County. In relevant part, the indictment charged Webb with two different counts of engaging in organized crime. The first count alleged that on or about December 21, 2008:

> With the intent to establish, maintain or participate as a member of a criminal street gang the defendant committed aggravated robbery by intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place Kristin Jones in fear of imminent bodily injury or death, and the defendant used or exhibited a deadly weapon: to-wit: a firearm . . . .

The third count of the indictment alleged that on or about December 21, 2008;

> [A]nd . . . with the intent to establish, maintain or participate as a member of a criminal street gang the defendant committed aggravated robbery by then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, caused bodily injury to another, Kendrick Holt, by shooting Kendrick Holt with a firearm and the defendant used or exhibited a deadly weapon: to-wit: a firearm . . . .

The jury found Webb guilty of two counts of Engaging in Organized Criminal Activity, to-wit: Aggravated Robbery, in violation of Texas Penal Code § 71.02(a), with a finding that a deadly weapon, to-wit, a firearm, was used. Webb was sentenced to thirty (30) years' confinement in the Institutional Division of the Texas Department of Criminal Justice for each count, with the sentences running concurrently. Webb timely appealed.

## FACTUAL BACKGROUND

Michael "Gorilla" Smith ("Smith") has known Webb, who is also known as "Slim," for a number of years. Smith also knew Andrew Keoni Gomez ("Gomez"), Josef Hickey ("Hickey"), and Danarieon Trigg ("Trigg") as well. Smith, Webb, Gomez, and Hickey had been friends and members of one or more sets ("cliques") of the Crips, a criminal street gang.

---

[2] Prior to the start of trial, the State waived numerous counts.

2

On the night of December 21, 2008, Smith, Webb, Gomez, Hickey, and Trigg had been partying at the home of Michael Palazzo. They left that house to look for a party at an Arlington apartment complex, leaving in Smith's white Pontiac Grand Am. Smith drove, Webb, Gomez, and Trigg were passengers in the back seat, and Hickey was a passenger in the front. Smith overheard a conversation among the backseat passengers that they wanted to "go hit a lick," a phrase Smith explained meant "[t]o rob someone,"[3] and that he overheard Webb and Gomez decide to "hit a lick" when they were pulling into the parking lot of the apartments. Smith parked his car, and Trigg exited and went in one direction, while Webb and Gomez went in a different direction, towards the car of Kristin Jones ("Jones").

That evening, Jones and Kendrick Holt ("Holt") left a party and got into Jones's car, when they then heard guns tapping on the car windows. The gunmen pulled open the car doors and demanded Holt and Jones turn over their valuables. Both gunmen pointed their weapons at Holt and Jones; both used their weapons to pistol-whip Holt; and one gunman also shot Holt. Jones and Holt eventually ran away in opposite directions to escape. Jones heard repeated gunshots and dropped to the ground, while the gunmen fled the scene in a white car. Jones identified Webb in open court as one of the two men who robbed her at gunpoint.

From his vehicle, Smith observed Webb and Gomez assault Holt using their hands, feet, and firearms; heard a female voice repeatedly saying "Take anything you want. Don't shoot me"; saw Holt limp away from the location of the fight, then heard the sound of a gunshot and saw Holt fall to the ground. After hearing more gunshots, Smith pulled his car out of the parking spot and drove toward the location where the gunshots were originating. Smith and Hickey told Webb and

---

[3] *See also Amador v. State*, 376 S.W.3d 339, 341 (Tex.App.--Houston [14th Dist.] 2012, pet. ref'd)("hit a lick" means to rob someone or break into someone's car).

Gomez to get inside the Pontiac, which they did. During the melee, at least one bullet came through the windshield of Smith's car and struck him. After fleeing the scene, Webb and Gomez hid their guns between the carpet lining and outer panel of the trunk of Smith's car.

At trial, Smith told the jury that Webb and Gomez worked together to rob Holt and Jones. Smith further testified that he, Webb, Gomez, and Hickey were associating together on December 21, 2008, and that aggravated robbery was consistent with their activities and association with the Crips criminal street gang.[4] During cross-examination, Smith testified that he did not consider a "clique" a criminal street gang, and suggested that he, Webb, Gomez, Trigg, and Hickey had gone searching for a party on December 21 as friends looking to have a good time, not as gang members or with a plan to commit a gang-related crime.

While incarcerated in the Arlington Police Department jail, Webb made a number of phone calls which were recorded pursuant to jail procedure. Josue Saucedo ("Saucedo"), a friend of Webb's, testified about the recordings. Saucedo testified that the first recording, made the evening of December 21, 2008, was of a phone call between Webb, Webb's mother, and Josef Beltran ("Beltran"), who Saucedo identified as being affiliated with the Crips. The second call, made later the evening of December 21, 2008, was between Webb and Beltran, both identified by Saucedo. Saucedo discussed the phrases and terms used in the calls to the jury: explaining that the phrase "slap that n****," which Webb used in the first call, meant that Webb was instructing

---

[4]
Q: You guys were associating on December 21st, 2008, together, weren't you?
A: Yes.
Q: Criminal activity did occur; is that correct?
A: Yes.
Q: Would that be consistent with that association as Crips?
A: Yes.
Q: Is that just what Crips do?
A: Yes.

4

Beltran to find and hurt Smith for "snitching"[5]; that Webb's use of the phrase "go get some pain," in the second recording meant that Webb "and his affiliates wanted some kind of action to be taken towards – to get Gorilla to stop" cooperating with the police; and that the use of the word "tool" in the recordings was a reference to a gun. Saucedo further testified that approximately two weeks after the events of December 21, 2008, he overheard Webb describing the events of that evening:

> Basically, that they were coming to a party and with intentions to rob someone there, things got out of control, [Gomez] started fighting the guy, [Webb] jumped in, shots were fired and Gorilla got shot and the other guy did, too.

Saucedo heard from other people including Gomez, Hickey, and Smith that Webb and the others had gone to the party with the plan to "hit a lick," or rob someone.

At trial, Webb admitted that he was a member of the Rolling 60s Crips, a criminal street gang.[6] Webb acknowledged that Gomez was also a member of the Rolling 60s Crips, and he and Gomez appeared in a photograph where the letters "CTC," standing for "Certified Texas Crips," were visible.[7] In response to whether CTC was a criminal street gang, Webb responded "yes and no," and stated that he was "never CTC. I was always Rolling 60s." Webb admitted to using and exhibiting a firearm on December 21, 2008; that Holt was shot; and that property belonging to Holt and Jones was found in Smith's car. Webb testified that he had hidden his firearm in the trunk of Smith's car, and that though Smith told him to hide the guns, that Webb knew where to hide them already:

---

[5] Saucedo explained that the term "snitch" meant talking to or cooperating with law enforcement in their investigations.

[6] Webb's stipulation that he was a member of a criminal street gang on December 21, 2008 was read to the jury and admitted into evidence.

[7] State's Exhibit 90 was a photograph in which Webb and other gang members are seen wearing blue clothing, the color associated with the Crips. State's Exhibit 91 is a photograph showing Webb and other gang members "throwing" gang signs and standing behind the letters "CTC," indicating Certified Texas Crips. Testimony presented at trial indicated that Gomez, Smith, Hickey, and Palazzo appear in both exhibits as well.

Q: And [Smith] pulls back the [trunk] carpet and tells you where to put it?
A: No. He showed me. We always hung together. We always were in Gorilla's car so I know exactly where to put the guns.
Q: So you would always hide your guns there?
A: Yes.

Webb admitted that he called Beltran from the Arlington jail and asked Beltran to retrieve Webb's firearm from the trunk of Smith's car before the police found it; Webb's statement to Beltran to "get mine's and Crazy K's tool." Webb denied that Beltran was a member of the Rolling 60s Crips. Webb also testified that the reason for going to the apartment complex that evening was to go to a party.

## DISCUSSION

In his sole issue, Webb asserts that the evidence is legally insufficient to sustain the first degree engaging in organized crime convictions and prays that the conviction be reversed and an acquittal rendered. Specifically, Webb contends that all the direct evidence presented indicated that he and his friends were merely hanging out and going to a party, with no intention to participate in gang activity. Webb asserts that all the direct evidence presented at the trial indicated that the people in Smith's vehicle were "merely hanging out as friends," with "no intention on their parts to participate in gang activity."

### Applicable law and Standard of Review

In *Brooks v. State*, the Court of Criminal Appeals abandoned factual sufficiency review in those cases where the burden of proof is beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010)(finding no meaningful distinction between the legal and factual sufficiency standards and no justification for retaining both standards, therefore overruling the factual sufficiency review adopted in *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.

6

1996)).   The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99

S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in

determining whether the evidence is sufficient to support a conviction.   *Brooks*, 323 S.W.3d at

894-95.   Therefore, we will review the evidence under the *Jackson* legal sufficiency standard and

determine whether the evidence is sufficient to support the challenged elements beyond a

reasonable doubt.   *See id.*, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

When reviewing the sufficiency of the evidence to support a criminal conviction, we view

the evidence in the light most favorable to the verdict to determine whether, based on that evidence

and reasonable inferences therefrom, a rational juror could have found the essential elements of the

offense beyond a reasonable doubt.   *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007),

*quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2788-89.

Under a legal sufficiency review, we may not substitute our judgment for that of the jury,

who is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given

to the evidence.   *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007).   We therefore

defer to the jury's resolution of these issues and to its responsibility to draw reasonable inferences

from basic facts to ultimate facts.   *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19,

99 S.Ct. at 2788-89.   In resolving what the facts are and what reasonable inferences may be drawn

from them, the jury may accept one version of the facts and reject another, and it may reject any

part of a witness's testimony, even if uncontradicted.   *See Margraves v. State*, 34 S.W.3d 912,

919 (Tex.Crim.App. 2000), *overruled on other grounds*, *Laster v. State*, 275 S.W.3d 512

(Tex.Crim.App. 2009); *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008)("[T]he jury

is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose

7

to believe some testimony and disbelieve other testimony.").

In Texas, the essential elements of the crime are defined by the "hypothetically correct jury charge" for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *Cada v. State*, 334 S.W.3d 766, 773 (Tex.Crim.App. 2011)(same). The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240; *see also Miles v. State*, 357 S.W.3d 629, 631 (Tex.Crim.App. 2011)(noting same).

To establish engaging in organized criminal activity, the State had the burden to prove beyond a reasonable doubt that appellant committed the underlying offense of aggravated robbery with the intent to establish, maintain, or participate as a member of a criminal street gang. *Jackson v. State*, 314 S.W.3d 118, 124-25 (Tex.App.--Houston [1st Dist.] 2010, no pet.), *citing Curiel v. State*, 243 S.W.3d 10, 16 (Tex.App.--Houston [1st Dist.] 2007, pet. ref'd); TEX.PENAL CODE ANN. § 71.02. A person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . he commits or conspires to commit" one of several enumerated offenses, including aggravated robbery. TEX.PENAL CODE ANN. § 71.02(a)(1)(West Supp. 2012).

A combination means three or more persons who collaborate in criminal activities, even though the participants may not know the others' identities; the membership may change from time to time; and the participants may stand in a wholesale-retailer or other arm's-length relationship in illicit distribution operations. *See* TEX.PENAL CODE ANN. § 71.01(a)(West 2011). "Conspires to commit" means "that a person agrees with one or more persons that they or one or

8

more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement." TEX.PENAL CODE ANN. § 71.01(b). "It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal." *Arredondo v. State*, 270 S.W.3d 676, 682 (Tex.App.--Eastland 2008, no pet.), *citing McGee v. State*, 909 S.W.2d 516, 518 (Tex.App.--Tyler 1995, pet. ref'd). However, proof of a single, *ad hoc* effort is insufficient. *Id.* "Profits" consist of any "property constituting or derived from any proceeds obtained, directly or indirectly, from an offense listed in Section 71.02." TEX.PENAL CODE ANN. § 71.01(c). Section 71.01 of the Penal Code defines "criminal street gang" as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." TEX.PENAL CODE ANN. § 71.01(d).

Because direct evidence is rarely available to prove the existence of an agreement, circumstantial evidence is sufficient and is almost always needed. *Gonzalez v. State*, 63 S.W.3d 865, 869 (Tex.App.--Houston [14th Dist.] 2001), *aff'd*, 117 S.W.3d 831 (Tex.Crim.App. 2003); *Jarnigan v. State*, 57 S.W.3d 76, 87 (Tex.App.--Houston [14th Dist.] 2001, pet. ref'd). Intent and knowledge are fact questions for the jury and are almost always proven through circumstantial evidence. *Robles v. State*, 664 S.W.2d 91, 94 (Tex.Crim.App. 1984). A jury may infer intent from any facts that tend to prove the combination's existence, including the defendant's words, acts, and conduct and the method of committing the enumerated offense. *Arredondo*, 270 S.W.3d at 682. It is permissible to infer an agreement among a group working on a common project when each person's action is consistent with realizing the common goal. *McGee*, 909 S.W.2d at 518.

**Application of law to facts**

9

Webb's argument is that he did not intend to maintain, establish, or participate in a criminal street gang. Webb contends that there was no direct evidence to support his participation; however, as noted in *Gonzlez*, a jury need not rely on direct evidence in its analysis. *Gonzalez*, 63 S.W.3d at 869. Webb's argument focuses on the finding of a combination or criminal street gang rather than the underlying offense of aggravated robbery, and this analysis will likewise concentrate upon that element.

Viewing the evidence in a light most favorable to the jury's verdict, the evidence shows that Webb committed the underlying aggravated robbery with the intent to participate as a member of a criminal street gang. Webb stipulated that he was a member of a criminal street gang on December 21, 2008. Webb, Gomez, Smith, and Hickey were all either members of or affiliated with the Crips criminal street gang. Webb, Gomez, Hickey, and Smith, along with Trigg, rode in Smith's vehicle on December 21, 2008, at which time Smith overheard a conversation between Webb, Gomez, and Trigg that they wanted to "go hit a lick," or rob someone, and that Webb and Gomez decided to commit this act as they were pulling into the parking lot. Such activity is consistent with the criminal activity of the Crips and Smith agreed such activity is "just what Crips do." Saucedo overheard Webb describing the events of December 21, 2008, namely that Webb and the others had come to the party with the intention to rob someone there. Webb and Gomez hid their guns in the trunk of Smith's vehicle, and while incarcerated, Webb called Beltran, who was affiliated with the Crips, and asked Beltran to remove the guns from the vehicle before they were found. Webb further asked Beltran to take some sort of action towards Smith regarding his cooperation with the police.

A rational trier of fact could have found or inferred that Webb was a member of a criminal

street gang; that Webb intended to establish, maintain, or participate in such criminal street gang; that Webb, Gomez, Smith, and Hickey committed or conspired to commit an aggravated robbery as part of the criminal street gang or combination; and that Webb and Beltran, both affiliated with a criminal street gang, sought to conceal evidence and prevent Smith from cooperating with the police, thus satisfying the continuing course of criminal activity. Viewing the evidence in the light most favorable to the verdict, based on the evidence above and reasonable inferences drawn therefrom, we conclude that a rational juror could have found that the State proved the essential elements of the offense beyond a reasonable doubt and found Webb guilty of both counts of engaging in organized criminal activity. *Hooper*, 214 S.W.3d at 13.

Therefore, we hold the evidence is legally sufficient to support a verdict against Webb for engaging in organized criminal activity. Webb's sole issue is overruled.

## CONCLUSION

Having overruled Webb's sole issue, the judgment of the trial court is hereby affirmed.

March 27, 2013

GUADALUPE RIVERA, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J. (Not Participating)

(Do Not Publish)

11