

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00321-CR
No. 02-18-00322-CR

———————————————

JASON ARTHUR DUCHESNEAU, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 1
Tarrant County, Texas
Trial Court Nos. 1522440, 1522441

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I. Introduction

Appellant Jason Arthur Duchesneau appeals his convictions for assault causing bodily injury to a family member and interference with an emergency call, which were tried together in a single proceeding. *See* Tex. Penal Code Ann. §§ 22.01(a), 42.062(a). In four points, Duchesneau argues that the trial court violated his right to confront the witnesses against him when it admitted a dash cam video and recordings of two 911 calls; that Texas Code of Criminal Procedure article 102.008(a), which assesses the district attorney fee, is unconstitutional; and that he was unlawfully assessed duplicate court costs. We hold that (1) Duchesneau's confrontation rights were not violated because the dash cam video and the recordings of the two 911 calls contain nontestimonial statements and (2) Texas Code of Criminal Procedure article 102.008(a) is not unconstitutional; accordingly, we affirm the judgment for assault causing bodily injury to a family member. But because we hold that Duchesneau was assessed duplicate court costs and that the court costs in the higher cause number must be deleted, we affirm as modified the judgment for interference with an emergency call.[1]

---

[1]Because Duchesneau does not challenge the sufficiency of the evidence to support his convictions, we omit a detailed factual background and set forth any facts relevant to our analysis under each point.

## II. Confrontation-Clause Arguments

In his first and second points, Duchesneau argues that the trial court violated his right to confront the witnesses against him when it admitted a dash cam video and recordings of two 911 calls, which each contain allegedly testimonial statements made by witnesses who did not testify at trial.

### A. Standard of Review

A trial court's decision to admit evidence is reviewed under an abuse-of-discretion standard. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). However, if the admission of evidence involves a constitutional legal ruling, such as whether a statement is testimonial or nontestimonial, the appellate court gives almost total deference to the trial court's determination of historical facts but reviews de novo the trial court's application of the law to those facts. *See Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010); *Wall*, 184 S.W.3d at 742 (applying hybrid standard of review to issue of whether statement was testimonial).

### B. Applicable Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 1357, 1359 (2004); *Langham*, 305 S.W.3d at 575 (citing U.S. Const. amend. VI). "[T]he most important instances in which the [Confrontation] Clause

3

restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S. Ct. 1143, 1155 (2011). Once a defendant raises a Confrontation-Clause objection, the burden shifts to the State to prove either (1) that the proposed statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause or (2) that the statement does contain testimonial hearsay but is nevertheless admissible. *See De la Paz v. State*, 273 S.W.3d 671, 680–81 (Tex. Crim. App. 2008) (citing *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374).

To determine whether the admission of the recordings of the 911 calls and the dash cam video violated the Confrontation Clause, we must first determine whether the statements on the recordings are testimonial. In *Davis v. Washington*, the United States Supreme Court explained the distinction between testimonial and nontestimonial statements:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency[] and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822, 126 S. Ct. 2266, 2273–74 (2006) (footnote omitted). A court considers the totality of the circumstances in determining whether a statement is testimonial. *Clark v. State*, 282 S.W.3d 924, 931 (Tex. App.—Beaumont 2009, pet. ref'd).

4

"Statements made to police during contact initiated by a witness at the beginning of an investigation are generally not considered testimonial." *Cook v. State*, 199 S.W.3d 495, 498 (Tex. App.—Houston [1st Dist.] 2006, no pet.). For this reason, 911 calls initiated to summon police assistance are generally nontestimonial because they are "a cry for help" or "the provision of information enabling officers to end a threatening situation." *Davis*, 547 U.S. at 832, 126 S. Ct. at 2279; *Cook*, 199 S.W.3d at 498; *see also Rodgers v. State*, No. 09-09-00359-CR, 2010 WL 3043705, at *2 (Tex. App.—Beaumont Aug. 4, 2010, no pet.) (mem. op., not designated for publication) (listing cases in which courts concluded that similar 911 calls were nontestimonial). Similarly, responses to preliminary questions by police at the scene of a crime while police are assessing and securing the scene are not testimonial. *See Spencer v. State*, 162 S.W.3d 877, 882 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

In *Davis*, the Court addressed whether statements made by a victim of domestic violence to a 911 operator were testimonial in nature. *See* 547 U.S. at 826–27, 126 S. Ct. at 2276–77. In determining that the caller's statements were nontestimonial and thus admissible, the *Davis* court considered the following factors: (1) the caller was describing events as they were actually happening rather than past events; (2) any reasonable listener would recognize that the caller was facing an ongoing emergency; (3) when viewed objectively, the nature of what was asked and answered was such that the elicited statements were necessary to resolve the present emergency, rather than simply to learn what had happened in the past; and (4) the caller was frantically

answering the 911 emergency operator's questions over the phone in an environment that was not tranquil or even safe. *See id.* at 826–27, 126 S. Ct. at 2276–77. The *Davis* court concluded that the caller was "seeking aid, not telling a story about the past." *See id.* at 831, 126 S. Ct. at 2279.

In addition, the following principles are useful in determining whether particular statements are testimonial: (1) testimonial statements are official and formal in nature, (2) interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police, (3) spontaneous statements to the police are not testimonial, and (4) responses to preliminary questions by police at the scene of the crime while police are assessing and securing the scene are not testimonial. *Amador v. State*, 376 S.W.3d 339, 342–43 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

With these considerations in mind, we now examine the complained-of statements in the 911 recordings and the dash cam video to determine whether they were testimonial.

## C. Analysis

### 1. Statements in the 911 Call Made by Duchesneau's Daughter[2]

In part of his second point, Duchesneau argues that the trial court abused its discretion by admitting the recording of Daughter's 911 call. Duchesneau contends

---

[2]We use aliases to refer to the minor children. *See* 2d Tex. App. (Fort Worth) Loc. R. 7; *see also* Tex. R. App. P. 9.8(a), 9.10. Moreover, it was noted at the outset of the trial that Daughter and Son were out of state, and thus they did not testify at the trial.

that the italicized portions of the following exchange between Daughter and the 911 operator were testimonial:

[911 operator:] 911. What seems to be the emergency?

[Daughter:] 911, I need help.

[911 operator:] Okay, where are you at?

[Daughter:] Mansfield.

[911 operator:] Okay, do you know --

[Daughter:] [Provides street name].

[911 operator:] You're on what drive?

[Daughter:] [Repeats street name].

[911 operator:] Do you know the house number?

[Daughter:] [Gives house number].

[911 operator:] [Repeats whole address]?

[Daughter:] Yes, ma'am.

*[911 operator:] What's going on?*

*[Daughter:] My dad is hurting my mom.*

[911 operator:] Okay, I'm getting 'em en route to you. *Is he physically hurting her?*

*[Daughter:] Yes! Physically hurting her!*

[911 operator:] Okay, I'm getting 'em to you, okay?

[Daughter:] Hurry up, hurry up!

7

[911 operator:]   I'm sending 'em to you -- I'm sending 'em to you, okay?

[Daughter:]  No, no, no!  [Unintelligible screaming.]

[Call ends.[3]] [Emphasis added.]

The entire call lasts only one minute.

With regard to the first *Davis* factor, the record demonstrates that Daughter used the present tense and described events as they were happening; Duchesneau was physically hurting her mother during the call.  *See* 547 U.S. at 826–27, 126 S. Ct. at 2276–77.  As to the second *Davis* factor, any reasonable listener would recognize that Daughter was facing an ongoing emergency based on her initial plea for help and her screams.  *See id.* at 826–27, 126 S. Ct. at 2276–77.  With regard to the third *Davis* factor, when viewed objectively, the nature of the 911 operator's questions and Daughter's answers was such that the elicited statements were necessary to resolve the present emergency rather than simply to learn what had happened in the past; Daughter provided the address of her home and information about what was currently happening.  *See id.* at 826–27, 126 S. Ct. at 2276–77.  And as to the fourth *Davis* factor, Daughter's screams indicated that she was answering the 911 operator's questions over the phone in an environment that was not tranquil or even safe.  *See id.* at 826–27, 126 S. Ct. at 2276–77.

---

[3]The record demonstrates that Duchesneau took Daughter's phone from her while she was on the phone with the 911 operator.

8

After applying the *Davis* factors to the recording of Daughter's call to 911, we conclude that the out-of-court statements on the 911 recording, when viewed objectively, were made informally under circumstances indicating that the primary purpose of the interrogation was to enable the police to meet an ongoing emergency, rather than to establish or prove past events potentially relevant to later criminal prosecution. *See Hernandez v. State*, 562 S.W.3d 500, 506 (Tex. App.—Houston [1st Dist.] 2017, pets. filed); *see also Rosenbusch v. State*, No. 03-18-00096-CR, 2018 WL 6837741, at *2 (Tex. App.—Austin Dec. 28, 2018, no pet.) (mem. op., not designated for publication) (holding that statements in the 911 calls made by witnesses were nontestimonial because the calls were made primarily to seek emergency assistance when the assault had just taken place, the victim was injured, and the callers were either explicitly requesting law enforcement and medical personnel or were implying that they should quickly come to the scene); *Robles v. State*, No. 01-16-00199-CR, 2018 WL 1056482, at *5–6 (Tex. App.—Houston [1st Dist.] Feb. 27, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that statements made during the third 911 call, which was initiated by the victim's son six minutes after the victim was hit and while she was in "real pain," were nontestimonial because the circumstances objectively indicated that the primary purpose of the operator's questions was to facilitate police or medical assistance to meet an ongoing emergency).

## 2. Statements in the 911 Call Made by Duchesneau's Son

9

In the remainder of his second point, Duchesneau argues that the trial court abused its discretion by admitting the recording of Son's 911 call. Duchesneau contends that the italicized portions of the following exchange between Son and the 911 operator were testimonial:

[911 operator:] 911. Location of your emergency?

[Son:] Um, [gives same address that Daughter provided] --

[911 operator:] Okay, *what's going* --

[Son:] In Hudson.[4]

[911 operator:] *-- on?*

[Son:] Uh, *I have an abusive father.*

[911 operator:] Okay, you said [repeats address]?

[Son:] [Repeats address], yeah.

[911 operator:] Okay, *what's goin' on?*

*[Son:] My -- my dad is beating my mom. I don't know what to do.*

[911 operator:] Okay, just stay on the line; we're getting 'em en route, okay?

[Son:] Yes, ma'am.

[911 operator:] Okay, is she hurt? Does she need an ambulance?

[Son:] Yes, yes, yeah, uh, no, I don't know. Just please send an officer.

[911 operator:] Okay, they're on the way. Just stay on the line with me. Okay? --

---

[4]The record does not contain an explanation for this reference.

[Son:]  Yes --

[911 operator:]  Where are they now?

[Son:]  They're in the bedroom.  I don't know what's going on.

[911 operator:]  Okay.

[Son:]  [Sighs]

[911 operator:]  What do you hear?

[Son:]  What?

[911 operator:]  Do you hear anything?  Do you hear crying, or what do you hear?

[Son:]  I hear screaming.

[911 operator:]  Okay.

[Son:]  [Breathing heavily]

[911 operator:]  Okay, what's your name?

[Son:]  [Son says his name].

[911 operator:]  [Son,] how old are you?

[Son:]  Sixteen.

[911 operator:]  Okay.
[Son:]  [Breathing heavily]

[911 operator:]  Who else is in the house with y'all, [Son]?

[Son:]  My mom, my dad, and my sister.

[911 operator:]  Okay.

[Son:] [Begins to cry]

[911 operator:] Okay, just stay on the phone with me okay, and let me know what's going on. They're on the way.

[Son:] [Crying]

[911 operator:] Can you hear anything now?

[Son:] No, it's quiet, and I don't know what's going on. [Crying]

[911 operator:] Okay.

[Son:] [Crying]

[911 operator:] It's okay, they're gettin' on the way to you, alright? Okay, it looks like there should be an officer --

[Son:] [Crying and says something unintelligible]

[911 operator:] -- that's on scene. Let me know if you see him.

[Son:] Okay. [Sniffing] He's not here yet.

[911 operator:] Okay.

[Son:] [Sniffing] Uh, wait, no, he's here.

[911 operator:] Okay, he is here. Okay, alright, okay, I'll go ahead and let you go, okay? Thank you.

[Son:] Thank you.

[911 operator:] Thank you.

[Call ends.] [Emphasis added.]

The phone call lasts two minutes and twenty-five seconds.

Duchesneau argues that the 911 operator was already familiar with the situation because the same operator handled both Daughter's call and Son's call; thus, during Son's call, "the dispatcher is attempting to gather further facts regarding what has taken place previously rather than the circumstances of any ongoing emergency." Duchesneau contends that Son's statement—"I have an abusive father"—demonstrates that the phone call was focused on "what had occurred in the past" and that there was not "any expressed concern or discussion of an ongoing emergency." Considering the totality of the circumstances, as we are required to do, the record does not support Duchesneau's argument, which misrepresents the state of the record.

Instead, similar to the analysis of Daughter's call, the record demonstrates that, regarding the first *Davis* factor, Son used the present tense during the majority of his statements and described events as they were happening; Son said that Duchesneau "is beating my mom" and that he could "hear screaming." *See* 547 U.S. at 826–27, 126 S. Ct. at 2276–77. As to the second *Davis* factor, any reasonable listener would recognize that Son was facing an ongoing emergency based on his statements about Duchesneau's beating Mother and that he did not know what to do, his plea to send an officer, his comment that he could hear screaming, and his crying. *See id.* at 826–27, 126 S. Ct. at 2276–77. With regard to the third *Davis* factor, when viewed objectively, the nature of the 911 operator's questions and Son's answers was such that the elicited statements were necessary to resolve the present emergency, rather

13

than simply to learn what had happened in the past; Son provided the address of his home and information about what was currently happening. *See id.* at 826–27, 126 S. Ct. at 2276–77. And as to the fourth *Davis* factor, Son's heavy breathing and his crying indicated that he was answering the 911 operator's questions over the phone in an environment that was not tranquil or even safe. *See id.* at 826–27, 126 S. Ct. at 2276–77. After applying the *Davis* factors to the recording of Son's call to 911, we conclude that the out-of-court statements on the 911 recording, when viewed objectively, were made informally under circumstances indicating that the primary purpose of the interrogation was to enable the police to meet an ongoing emergency rather than to establish or prove past events potentially relevant to later criminal prosecution. *See Hernandez*, 562 S.W.3d at 506; *see also Rosenbusch*, 2018 WL 6837741, at *2; *Robles*, 2018 WL 1056482, at *5–6.

### 3. Summary of Holdings on the Admissibility of Statements in the 911 Calls

Having determined that the complained-of statements in both 911 calls were nontestimonial, we conclude that the trial court did not abuse its discretion by admitting the recordings of Daughter's 911 call and Son's 911 call. *See Hernandez*, 562 S.W.3d at 507. Accordingly, we overrule Duchesneau's second point.

### 4. Statements on the Dash Cam Video

In his first point, Duchesneau complains about the admission of Daughter's statements from the dash cam video. The State played a two-minute clip from the video, which shows Officer Jason Minchew arriving at the Duchesneau residence and

14

Daughter's approaching the patrol car. Duchesneau specifically complains about the admission of the following: (1) Officer Minchew asking Daughter, "What's going on? Where is everybody at?" and (2) Daughter's reply, "My daddy's in the house. He hurt my mom," as she pointed toward the house.

Before playing the video for the jury, Officer Minchew testified that he was dispatched to an assault in progress, that he drove alone to that location, and that he was the first officer to arrive. Officer Minchew said that when he arrived at the scene, Daughter approached his vehicle and indicated that there was an assault between Mother and Duchesneau. Officer Minchew said that Daughter was upset, was crying, and spoke quickly. As Officer Minchew approached the home, he saw that Mother was outside and that she had blood coming from her upper lip. Officer Minchew testified that Mother's emotional state was similar to Daughter's. Officer Minchew testified that Daughter and Mother indicated that Son and Duchesneau were inside the home. Officer Minchew said that he was concerned for Son's safety, as well as his own safety. The State played a two-minute clip from Officer Minchew's dash cam video, which contains his initial conversation with Daughter and Mother.[5]

---

[5]After the complained-of statements were made, Officer Minchew and Daughter walked out of the dash cam's view. The dash cam, however, continued to record the audio from Officer Minchew's microphone. Officer Minchew asked, "Who else is in the house?" Daughter answered, "My brother." They came into contact with Mother outside the home, and she answered Officer Minchew's question about who else was in the house with "my son." Officer Minchew then asked for the name of Mother's husband and whether there were any weapons in the house. After Mother replied, "No," Officer Minchew knocked loudly on the front door. A male

15

Duchesneau relies on *Bates v. State* in arguing that the complained-of statements on the dash cam video were not addressing an ongoing emergency and were thus testimonial. 494 S.W.3d 256, 266–67 (Tex. App.—Texarkana 2015, pet. ref'd). In *Bates*, the trial court admitted, over Bates's confrontation objections, a police officer's dash cam video containing statements from witnesses who had seen Bates slam his truck into his neighbor's front porch, pinning his neighbor between the truck and his front porch. *Id.* at 262. The court of appeals in *Bates* held that the witnesses' statements on the dash cam video were testimonial because it was clear that the immediate danger had passed, that the officers were investigating a completed crime, that there was no danger that Bates would abscond (he was sitting on the porch waiting for the police when they arrived), and that he no longer posed any danger to others at the scene (he was handcuffed and placed in a police car shortly after police arrived). *Id.* at 262–63.

Here, unlike in *Bates*, the record demonstrates that Daughter's responses to Officer Minchew's initial questions upon arriving at the scene of the crime were not testimonial. Officer Minchew arrived at the scene of the assault approximately one minute after he was dispatched. Daughter came up to Officer Minchew as soon as he exited his vehicle. The questions that Officer Minchew posed to Daughter sought to

---

voice, presumably Duchesneau's, asked who was at the door, and Officer Minchew answered, "Mansfield Police." Duchesneau opened the door, and Officer Minchew instructed him to turn around and to put the phone down and ultimately handcuffed him.

determine what was presently happening, not what had happened in the past, and to learn where Duchesneau was in order to assess and secure the scene. Both Daughter and Mother appeared to be upset, and Mother—the complainant—had blood on her lip. Although Mother and Daughter were separated from Duchesneau when Officer Minchew arrived, Duchesneau had not been apprehended and was in the home with Son. *See Bryant*, 562 U.S. at 359, 363, 131 S. Ct. at 1156, 1158 (emphasizing that for an ongoing emergency to exist, there does not have to be a continuing threat to the original victim; instead, there could be a continuing threat to the general public or even to the police responding to the situation after the initial threat to the first victim had been neutralized).

Having considered the totality of the circumstances, we conclude that the primary purpose of Officer Minchew's two questions immediately after arriving on the scene was to enable him to respond to an ongoing emergency or to render aid in response to the 911 calls requesting help for Mother. Consequently, Daughter's statements to Officer Minchew at the outset of the dash cam video were nontestimonial, and their admission did not violate the Confrontation Clause. *See Washington v. State*, No. 05-14-00604-CR, 2015 WL 4178345, at *7 (Tex. App.—Dallas July 10, 2015, no pet.) (not designated for publication) (holding that the primary purpose of obtaining the witness's statements was to respond to an ongoing emergency when police questioned witness shortly after two people had just been shot, the suspect was at large, and the witness was in a great deal of distress while

17

making statements); *see also Villanueva v. State*, No. 01-18-00115-CR, 2019 WL 1186807, at \*3 (Tex. App.—Houston [1st Dist.] Mar. 14, 2019, pet. filed) (holding as nontestimonial the witness's statements that were made to police at the crime scene nine minutes after the crime was committed and when the perpetrator had not been apprehended); *Amador*, 376 S.W.3d at 343 (holding that the primary purpose of obtaining the witness's statements was to respond to an ongoing emergency when police spoke to witness at the scene shortly after an armed robbery and believed that armed assailants were still in the area). We therefore hold that the trial court did not abuse its discretion by admitting the dash cam video, and we overrule Duchesneau's first point.

### III.  Article 102.008(a) Is Constitutional on Its Face

As reflected in the itemized bill of costs in the assault case, the trial court assessed $25 for "FEE SERVICES PROSECUTOR/DA."

In his fourth point, Duchesneau argues that Texas Code of Criminal Procedure article 102.008(a), which assesses the district attorney fee, is unconstitutional. *See* Tex. Code Crim. Proc. Ann. art. 102.008(a). Duchesneau contends that article 102.008(a) is unconstitutional to the extent that it allocates funds to the county's general fund because those funds allow spending for purposes other than legitimate criminal justice purposes in violation of the separation of powers provision of the Texas constitution. We construe Duchesneau's argument as a facial challenge.

18

This court recently set forth a detailed analysis explaining that because interrelated statutes "direct[] the fee to be expended as compensation for the prosecuting attorney," which is kept separate from other county funds, the $25 fee is expended for a legitimate criminal justice purpose. *See Tyler v. State*, 563 S.W.3d 493, 503 (Tex. App.—Fort Worth 2018, no pet.).[6] In accordance with our decision in *Tyler*, we hold that article 102.008(a) is facially constitutional. *See id.* We overrule Duchesneau's fourth point.

## IV. Duplicate Court Costs

In his third point, Duchesneau argues that he was unlawfully assessed duplicate court costs of $259. To rectify the error, Duchesneau requests that we modify the interference-with-an-emergency-call judgment, which has the higher cause number, by deleting the court costs assessed. The State agrees.

Texas Code of Criminal Procedure article 102.073 provides for the assessment of court costs in a single criminal action as follows:

> (a) In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant.
>
> (b) In a criminal action described by Subsection (a), each court cost or fee the amount of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions.

---

[6]Duchesneau's brief acknowledges that this court has held contrary to his argument.

Tex. Code Crim. Proc. Ann. art. 102.073(a)–(b). When a trial court erroneously assesses court costs for multiple convictions that were tried in a single proceeding, we retain the court costs for the offense of the highest category and modify the judgment in the offense of the lower category to delete the duplicate court costs. *See Santoro v. State*, Nos. 02-18-00039-CR, 02-18-00040-CR, 2018 WL 3153564, at \*2 (Tex. App.—Fort Worth June 28, 2018, no pet.) (mem. op., not designated for publication) (citing Tex. Code Crim. Proc. Ann. art. 102.073(b)). Moreover, when the convictions are the same category of offense and the costs are all the same, the court costs should be based on the lowest cause number. *See Williams v. State*, 495 S.W.3d 583, 590 (Tex. App.—Houston [1st Dist.] 2016) (op. on reh'g), *pet. dism'd*, No. PD-0947-16, 2017 WL 1493488, at \*1 (Tex. Crim. App. Apr. 26, 2017) (not designated for publication).

Here, Duchesneau was convicted in a single proceeding of assault causing bodily injury to a family member and interference with an emergency call. Despite that both offenses were tried in a single proceeding, the trial court assessed $259 in court costs for each conviction. Both offenses are Class A misdemeanors. *See* Tex. Penal Code Ann. § 22.01(b) (stating that assault is a Class A misdemeanor); *id.* § 42.062(c) (stating that interference with an emergency call is a Class A misdemeanor). Because both judgments include court costs of $259 and because both offenses are Class A misdemeanors, we modify the interference-with-an-emergency-call judgment, as agreed to by the State, to delete the assessed court costs

20

in trial court cause number 1522441.[7] *See Williams*, 495 S.W.3d at 590; *see also Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013) (concluding that when trial court erroneously includes certain amounts as court costs in judgment, appeals court should modify judgment to delete erroneous amount). Accordingly, we sustain Duchesneau's third point.

## V.  Conclusion

Having overruled Duchesneau's first, second, and fourth points, we affirm the judgment in trial court cause number 1522440 (our case number 02-18-00321-CR), but having sustained his third point, we modify the judgment in trial court cause number 1522441 (our case number 02-18-00322-CR) to delete the assessed court costs of $259 and affirm that judgment as modified.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 13, 2019

---

[7]Our disposition does not alter the $1,000 fine that was assessed in the interference-with-an-emergency-call judgment.