**301-15**

ORIGINAL

No. 08-12-00299-CR

COURT OF CRIMINAL APPEALS
AUSTIN TEXAS

ROBERT CARVER

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

VS.

STATE OF TEXAS

On Appeal from 362ND District Court,

Denton County, Texas

Cause No.'s  F-2010-1715-D, F-2010-1716-D, F-2010-2243-D

PETITION FOR DISCRETIONARY REVIEW

ROBERT CARVER, Pro se

TDCJ-ID # 1830004

1385 FM 3328

Palestine, Texas 75803

FILED IN
COURT OF CRIMINAL APPEALS

MAR 23 2015

Abel Acosta, Clerk

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

Appellant: Robert Carver

Appellant's Counsel at Trial: Patty A. Tress
State Bar No. 24048679
1005 North Elm St.
Denton, Texas 76201
Telephone: (972) 325-1758
Fax: (972) 869-0003

Appellant's Counsel on Appeal: Robert Carver, pro se, TDCJ-ID#1830004
Gurney Unit
1385 FM 3328
Palestine, Texas 75803

Appellee: State of Texas          Judge: Robert Bruce McFarling

Appellee's Counsel at Trial:      On Appeal:
Matthew Shovlin                   Charles Orbison
State Bar No. 24002940            State Bar No. 24009335
1450 E. McKinney, Third FL        1450 E. McKinney, Third FL
Denton, Texas 76209              Denton, Texas 76209
Telephone: (940) 349-2600         Telephone: (940) 349-2600
Fax: (940) 349-2601               Fax: (940) 349-2601

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . V

STATEMENT OF THE CASE . . . . . . . . . . . V

STATEMENT OF PROCEDURAL HISTORY . . . . . . . Vi

GROUNDS FOR REVIEW . . . . . . . . . . . . vii

ARGUMENT

    1. Court of Appeals erred in affirming Appellant's conviction of felony violation of protective order, when there was no finding of family violence in any of the judgments. . . . . . .p.1

SUMMARY OF THE ARGUMENT . . . . . . .p.1

PRAYER FOR RELIEF . . . . . . . . . . . . .p.7

Appendix . . . . . . . . . . . . . . . p.8

# INDEX OF AUTHORITIES

## Cases

Apprendi v. New Jersey,
   530 U.S. 466, 491 . . . . . . . . . . . p.6

Butler v. State,
   189 S.W. 3d 299, 302 (Tex.Crim.App. 2006) . . . . p.3

Evans v. State,
   606 S.W. 2d 880, 883 (Tex.Crim.App. 1980) . . . . . p.5

French v. State,
   830 S.W. 2d 607, 609 (Tex.Crim.App. 1992) . . . . . p.5

Patton v. State,
   835 S.W. 2d 684, 687 (Tex.App.-Dallas, 1992) no pet.) . . . p.2

Smith v. State,
   223 S.W. 3d 690, 696-97 (Tex.App.-Texarkana 2007) no pet... p.5

Villarreal v. State,
   286 S.W. 3d 331 (Tex.Crim.App. 2009) . . . . . . . . p.5

## Codes

Code Crim. Proc. Ann. art. 42.012 (Vernon Supp. 2005) . . . . p.3

Code Crim. Proc. Art. 17.292 (j) . . . . . . . . . . p.1,3,6

Code Crim. Proc. Art. 42.013 . . . . . . . . . p.3

Family Code Section 71.004 (1) . . . . . . . . p.3

Family Code §85.026, title 4 . . . . . . . . . p.1,2

## Statutes

Tex. Penal Code §12.43 (a) . . . . . . . . . p.3

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant believes that oral argument may aid the Court's decisional process. This appeal involved three different cases with four cause numbers, that occurred on different dates. This particular case No. 08-12-00299-CR, would normally be a misdemeanor, however, because there was an alleged assault, which put this into effect, that Appellant was acquitted on, there is some question as to weather this was even in effect on the date in question. In essence, there were two orders in effect at the same time, with different restrictions. Which one was the controlling order? Also, Appellant suggests the Emergency Protective Order was unclear as to the punishment for violation of such an order.

## STATEMENT OF THE CASE

Except as otherwise noted herein, Appellant adopts the statement of the case and facts in the opinion of the Court of Appeals. (See, 08-12-00299-CR, Opinion, p. 1-4).

## STATEMENT OF PROCEDURAL HISTORY

1. On January 28, 2015, Court of Appeals Affirmed this conviction.

2. On February 9, 2015, motion for Rehearing was filed.

3. On March 4, 2015, motion for Rehearing was denied.

## GROUNDS FOR REVIEW

ISSUE No. 1

1. Court of Appeals erred in affirming Appellant's conviction of felony violation of protective order, when there was no finding of family violence in any of the judgments.

2. Did the Court of Appeals incorrectly Apply a legal sufficiency review and err in concluding that the evidence was sufficient?

# ARGUMENT

## ISSUE NO. 1

COURT OF APPEALS ERRED IN AFFIRMING APPELLANT'S CONVICTION OF FELONY VIOLATION OF PROTECTIVE ORDER, WHEN THERE WAS NO FINDING OF FAMILY VIOLENCE IN ANY OF THE JUDGMENTS.

## SUMMARY OF THE ARGUMENT

DID THE COURT OF APPEALS INCORRECTLY APPLY A LEGAL SUFFI-CIENCY REVIEW AND ERR IN CONCLUDING THAT THE EVIDENCE WAS SUFFICIENT?

Appellant contends that there were two protective orders in effect at the same time, for the same residence, against the same individual. The second order was in effect five days longer than the first. Appellant was acquitted of the Aggravated Assault/Family violence charge, that put the first order in effect. The order wasn't served to the victim until June 20, 2010. The same day the second order went into effect. Appellant suggests that the Emergency Protective Orders were invalid. Code of Criminal Procedures, Article 17.292 (j), clearly states the order is to remain in effect up to Sixty-one days, but not less than thirty-one days from the date of issuance. (Family Code-§85.026, title 4). Both

orders issued to the Appellant said that they were in effect for ninety-one days, making the orders invalid.

The Emergency Protective Order that would apply in the instant case, was the one in effect prior to September 1, 2011. Section 7(b), Acts 2011, 82nd Leg. ch. 632 (S.B. 819) provides: The changes in law made by this Act to section 85.026 Family Code, apply only to a protective order issued on or after September 1, 2011 of this Act. A protective order issued before the effective date of this Act is governed by the law in effect on the date the order is issued and the former law is continued in effect for that purpose.

Appellant suggests that in order to obtain a conviction for violation of a protective order, the state must prove the existance of a valid order and the necessary elements. Patton v. State, 835 S.W. 2d 684, 687 (Tex. App.-Dallas, 1992, no pet.)

Appellant contends that if both protective orders were valid at the same time, a person could technically be convicted of committing two offenses during one crime, or violation. "Double Jeopardy". Appellant believes that any reasonable person would believe that the second order would be considered the controlling order, since Appellant was acquitted of the charge that put the first order in effect.

To obtain a conviction for violation of a protective order, the State was required to prove beyond a reasonable doubt that Appellant intentionally or knowingly committed family violence, in violation of an order on Family Code,

2

title 4 and Art. 17.292 of the Tex. Code Crim. Proc.

Tex. Code of Crim. Proc. Art. 42.013, statutorily obligates a trial court to enter an affirmative finding of family violence in the judgment, if during the guilt phase of trial, the Court determines that the offense involved family violence as defined by Family Code section 71.004(1). Butler v. State, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006); Tex. Code Crim. Proc. Ann. art. 42.013 (Vernon Supp. 2005).

Appellant claims that he was charged and assessed a penalty beyond the prescribed statutory maximum for the violation of the protective order, since he had never been convicted of any prior family violence assaults or protective order violations. Plus, there was no affirmative finding of family violence in the instant case. (CR1=118). Appellant was acquitted of the only Aggravated Assault/Family Assault in his trial. (RR7:56).

Appellant alleges that there was no family violence definition anywhere in the Magistrates Emergency Protective Order, (see, State's exhibit 8), and that he relied on the "Warning" in the protective order to believe that he would only be liable for a class A misdemeanor for violating any of the conditions. The protective order in this case states that a violation of this order by commission of an act prohibited by the order may be punishable by a fine of as much as $4000 or by confinement in jail for as long as one year, or both. This reflects the punishment range for a class A misdemeanor or any degree of felony. Tex. Penal Code §12.43(a).

3

The protective order goes on to say, "an act that results in family violence or a stalking offense may be prosecuted as a separate misdemeanor or felony offense". If the act is prosecuted as a separate felony offense, it is punishable by confinement in prison for at least two years. Appellant suggests that the punishment range for a third degree felony is not mentioned in the protective order. The warning mentions the possibility of being prosecuted as a separate felony, punishable of at least two years. Only a minimum was mentioned not, a third degree felony punishment range. This minimum was the same minimum for a second degree felony as well. Also, a two year sentence could imply, a state jail felony. Appellant argues that the wording on the protective order is unclear as to the punishment for violating the order.

The State incorrectly enhanced the violation of the protective order based on a prior family violence conviction, however, that conviction was not a final conviction and there was no family relationship. Appellant did not live with the victim and was not involved in a dating relationship. (State's exhibit 81).

The State must prove Appellant actually violated the protective order, not sufficient to show only that Appellant engaged in conduct that might be covered by one or more definitions contained in the provisions of the family code. Even if there is evidence of family violence, the State must

4

prove that the complained of conduct violated the terms of the protective order. <u>Villarreal v. State</u>, 286 S.W.3d 331 (Tex. Crim App. 2009), (Hervey, J. concurring). A finding that Appellant merely committed an act in furtherance of the offense is not the same.

Appellant contends that since the family violence element was not proven at trial, the violation of protective order by committing family violence conviction, should be acquitted. A jury charge which authorizes a conviction without requiring the jury to find all of the elements of the offense charged, is fundamentally defective. <u>Evans v. State</u>, 606 S.W.2d 880, 883 (Tex. Crim. App. 1980).

Appellant argues that the omission of the affirmative finding in the original judgment of convictions, of "family violence", is not a clerical error. He argues that the judgments reflected the jury's determination that an affirmative finding was not applicable. The Appellant suggests that the Court of Appeals is authorized to reform the trial court's judgment of conviction to speak the truth. <u>French v. State</u>, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); <u>Smith v. State</u>, 223 S.W.3d 690, 696-97 (Tex. App - Texarkana 2007, no pet). Appellant claims the judgment of convictions speak the truth, since there is no oral pronouncement to compare them to. (See, 08-12-00300-CR, Reply brief, p.2).

The Trial Court was not the trier of fact, in the instant case, therefore, they cannot add the family violence finding to the judgment of conviction by jury. Appellant suggests that if the Court were allowed to reform the judgment of

convictions to show a finding of family violence, Apprendi, would apply, since a family violence finding would change Appellant's punishment range, altering the nature of the offense. Apprendi v. New Jersey, 530 U.S. 466, 491. (See, 08-12-00300-CR, Reply brief, p.3).

Appellant should not have been convicted of a third degree felony, violation of protective order, without a finding of family violence. If it was proven that Appellant violated the protective order and the order was valid, then he should have been convicted of a class A misdemeanor. (See, State's exhibit 8).

A finding of family violence requires a higher culpable mental state because the family violence code language says, that family violence is an act that is intended to result in certain types of harm. (Tex. Fam. Code Ann. §71.004)

Appellant alleges that without the affirmative finding of family violence, as alleged in the indictment, or a finding that Appellant violated Art. 17292, Code of Crim. Proc., family code, title 4, the evidence is legally insufficient to support a felony conviction of violation of a protective order. Family violence is the essential element needed to prove the Appellant violated the felony protective order. Appellant was not found to have committed family violence in either judgment. (CR1:117), (CR1:136). Therefore, Appellant requests an acquittal, or a conviction on violation of the protective order, minus the family violence finding, which would be a class A misdemeanor.

## PRAYER FOR RELIEF

For all the reasons stated in this Petition, Appellant respectfully prays that this Court set aside the conviction and sentence, herein, and order an acquittal, or a conviction on a lesser included offense, or in the alternative, a new trial. Appellant further prays that he may have such other and further relief to which he may be just entitled.

*Robert Carver*

Robert Carver, pro se

1385 FM 3328

Palestine, Texas 75803

TDCJ-ID # 1830004


## CERTIFICATE OF DELIVERY

I, Robert Carver, certify that a true and correct copy of the Appellant's Petition for Discretionary Review was delivered by mail to Court of Criminal Appeals, Supreme Court Bldg., 201 W. 14th St. Rm. 106, P.O. Box 12308, Austin Texas, 78711-2308, on this 17 day of March 2015.

*Robert Carver*

7



## COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
## EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERT CARVER, | § | No. 08-12-00299-CR |
| Appellant, | § | Appeal from |
| v. | § | 362nd District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC # F-2010-1716-D) |

## J U D G M E N T

The Court has considered this cause on the record and concludes there was no error in the judgment. We therefore affirm the judgment of the court below. This decision shall be certified below for observance.

IT IS SO ORDERED THIS 28TH DAY OF JANUARY, 2015.

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

8



# COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
### EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERT CARVER, | § | No. 08-12-00299-CR |
| Appellant, | § | Appeal from |
| v. | § | 362nd District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC # F-2010-1716-D) |

## **O R D E R**

The Appellant's motion for rehearing, having been duly considered, is denied.

Accordingly, it is ORDERED that said motion be and it is hereby denied.

IT IS SO ORDERED THIS 4TH DAY OF MARCH, 2015.

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

9



| | | |
|---|---|---|
| ROBERT CARVER, | § | No. 08-12-00299-CR |
| Appellant, | § | Appeal from |
| v. | § | 362nd District Court |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC # F-2010-1716-D) |

## OPINION

Robert Carver, proceeding *pro se*, appeals his conviction of violation of a protective order. A jury found Appellant guilty and assessed his punishment at imprisonment for a term of ten years. We affirm.

## FACTUAL SUMMARY

Angie Kinser first met Appellant in 2008 or 2009 while she was working at a bar in Frisco, Texas. In early 2010, Kinser was in Dallas and ran into Appellant. They spoke for a while and exchanged phone numbers. Kinser was unemployed and did not have a place to live. Appellant offered Kinser a place to stay and said he might be able to help her find employment. A couple of weeks later, Kinser went out with Appellant and she moved into his home in Lewisville. Within a short period of time, they went to Las Vegas and got married. Both Appellant and Kinser frequently used alcohol and drugs, including methamphetamine and GHB.

On June 16, 2010, one of Kinser's friends, Kerri Kincaid, was visiting at Appellant's

house. All of them were drinking and using methamphetamine and GHB. Appellant went into the bedroom, but Kinser and Kincaid continued to "party." Appellant became upset when Kinser did not join him in the bedroom, but she stayed in another room with Kincaid. Kinser told Kincaid that she wanted to leave Appellant and she suspected he was hiding something on his work computer. Kinser went into the bedroom to retrieve the laptop but Appellant, who was pretending to be asleep, began yelling at her and asking why she had his computer. Kincaid attempted to calm Appellant while Kinser took a shower. After Kinser got out of the shower, she began gathering up some of her belongings to leave. When Appellant realized what Kinser was doing, he became extremely upset and chased her out of the house with a knife and a stun gun while threatening to kill her. Appellant eventually grabbed Kinser and dragged her back into the house while telling Kinser that she was not going anywhere. When Appellant learned that Kincaid had called 911, he became frantic and went into the kitchen. Kinser could hear him doing something in the kitchen. Police officers soon arrived at the residence and separated Appellant, Kinser, and Kincaid. The officers also found methamphetamine in the kitchen sink and bottles of GHB[1] inside of a small refrigerator in the master bedroom. Appellant was arrested for aggravated assault and possession of methamphetamine[2] and GHB. Kinser was also charged with possession of the methamphetamine found in the house.[3]

An emergency protective order was issued on June 17, 2010 to protect Kinser from

---

[1] GHB is the abbreviation of gamma-hydroxybutyrate or gamma-hydroxybutyric acid. GHB is included in Penalty Group 1. TEX.HEALTH & SAFETY CODE ANN. § 481.102(9)(West 2010).

[2] Methamphetamine is in Penalty Group 1. TEX.HEALTH & SAFETY CODE ANN. § 481.102(6).

[3] Kinser entered a plea of guilty and was sentenced to imprisonment for two years.

- 2 -

Appellant. Appellant signed the protective order on that same date and acknowledged he had received a copy of the order at the magistrate's hearing. The protective order expressly prohibited Appellant from committing family violence against Kinser. Unaware that Appellant had bonded out and was at home, Kinser went to Appellant's house on June 20, 2010 to feed their pets. Appellant became angry with Kinser and locked her in the bedroom. She eventually convinced him to let her leave by telling him that the police were looking for her to give her a copy of the protective order.

Kinser met Kincaid at the police station and she reported what Appellant had done. Police officers went with Kinser to the house so she could get her belongings and leave. Kinser waited outside while the officers walked through the house. After the officers assured Kinser Appellant was not home, Kinser went inside and the officers left. Kinser was getting some of her clothes from the dryer in the garage when she turned around and saw Appellant. Appellant struck her face with his fist and she fell onto her back. Appellant picked up a shovel and began trying to jab her with it. Kinser, who was still on the floor, blocked the blows with the shovel as best she could and she pleaded with Appellant to stop. Rather than stopping the assault, Appellant picked up an ax and held it in his hand above Kinser. Kinser kicked him in the abdomen as hard as she could and Appellant fell backwards. She ran into the house and deadbolted the door to the garage before running out of the house. Kinser ran to a neighbor's house but the neighbor refused to help and closed the door. Another neighbor, Peggy Romo, saw Appellant chasing Kinser while she was running as fast as she could and screaming, "He's going to kill me." Romo called 911 and reported what she had seen. When the police arrived,

- 3 -

Appellant was in the house and refused to come outside. He appeared extremely angry and was chopping at the back door of the house with the ax. During this tirade, Appellant directed profanity at Kinser and one of the officers testified that Appellant wanted to "get ahold of her." After several hours, Appellant exited the house and was taken into custody.

A grand jury indicted Appellant for possession of methamphetamine and GHB alleged to have occurred on June 16, 2010 (trial court cause number F-2010-2243-D and appellate cause number 08-12-00300-CR), violation of a protective order alleged to have occurred on June 20, 2010 (trial court cause number F-2010-1716-D and appellate cause number 08-12-00299-CR), and aggravated assault with a deadly weapon alleged to have occurred on June 20, 2010 (trial court cause number F-2010-1715-D and appellate cause number 08-12-00298-CR). The cases were tried together and a jury found Appellant guilty as charged by the indictment in each case.

### APPELLANT'S BRIEF

Appellant was initially represented by appointed counsel on appeal, but he filed a motion to represent himself after his attorney filed the brief on his behalf. The trial court conducted a hearing and warned Appellant of the dangers and disadvantages of self-representation but Appellant persisted in his desire to proceed without counsel. Accordingly, we granted Appellant's motion and struck the brief filed by counsel.

Appellant has three appeals pending before the Court, cause numbers 08-14-00298-CR, 08-14-00299-CR, and 08-14-00300-CR. He filed a single handwritten brief in these appeals and he raises ten issues, some of which do not pertain to the instant appeal. Rather than requiring Appellant to rebrief, we will simply not address the issues which are inapplicable to this appeal.

- 4 -

In order to avoid confusion for the parties, we will use the number assigned to each issue in the brief rather than renumbering the issues.

## CHARGE ERROR

In Issue Three, Appellant argues that the guilt-innocence charge is erroneous because it failed to define "family violence." Appellant did not object to the charge on this ground in the trial court.

### Standard of Review

Appellate review of alleged jury charge error generally involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(op. on reh'g). First, we must determine whether error occurred. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex.Crim.App. 2013); *Abdnor*, 871 S.W.2d at 732. When determining whether the charge is erroneous, we consider it "as a whole instead of a series of isolated and unrelated statements." *Dinkins v. State*, 894 S .W.2d 330, 339 (Tex.Crim.App. 1995).

If there is error in the charge, we must then analyze whether sufficient harm resulted from the error to require reversal. *Wooten*, 400 S.W.3d at 606. Under this second step, the degree of harm necessary for reversal usually depends on whether the appellant properly preserved the error by objection. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003). If the appellant failed to object to the charge, as in this case, reversal is required only if the error is so egregious and created such harm that the defendant did not have a fair and impartial trial. *Sakil v. State*, 287 S.W.3d 23, 26 (Tex.Crim.App. 2009).

- 5 -

*"Family Violence" is not Defined*

Appellant argues that the charge is erroneous because it does not define "family violence" which is an element of violating a protective order. We have reviewed the court's charge and find that it defines "family violence" in accordance with the statutory definition. Issue Three is overruled.

## HEARSAY

In Issue Five, Appellant contends that the trial court abused its discretion by admitting the hearsay statements Kerri Kincaid made to Officer Shelton under the excited utterance exception.

*Standard of Review and Relevant Law*

A trial court has broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991). Consequently, an appellate court reviews a trial court's decision admitting or excluding evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). The trial court's ruling will be overturned only if it is so clearly wrong that the ruling lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g).

Hearsay is not admissible except as provided by statute or the Texas Rules of Evidence. TEX.R.EVID. 802. An excited utterance is one exception to the general prohibition against the admission of hearsay. TEX.R.EVID. 803(2). Rule 803(2) provides that an excited utterance is: "A statement relating to a startling event or condition made while the declarant was under the

- 6 -

stress of excitement caused by the event or condition." TEX.R.EVID. 803(2). To qualify as an excited utterance, the statement must be a product of a startling occurrence; the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence; and the statement must be related to the circumstances of the startling occurrence. *Couchman v. State*, 3 S.W.3d 155, 159 (Tex.App.--Fort Worth 1999, pet. ref'd), *citing McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App. 1992).

In determining whether a hearsay statement is admissible as an excited utterance, the court may consider the time elapsed and whether the statement was in response to a question, but these two factors are not dispositive. *Zuliani v. State*, 97 S.W.3d 589, 595-96 (Tex.Crim.App. 2003). The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement. *Id.*, 97 S.W.3d at 596; *Salazar v. State*, 38 S.W.3d 141, 154 (Tex.Crim.App. 2001). The reviewing court must determine whether the statement was made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Zuliani*, 97 S.W.3d at 596, *quoting Fowler v. State*, 379 S.W.2d 345, 347 (Tex.Crim.App. 1964).

*Analysis*

Kincaid was the person who called 911 on June 16, 2010. Officer Shelton arrived at the scene in "well less than 10 minutes" after he received the dispatch and he spoke to Kincaid, who appeared "frazzled," approximately ten minutes after he arrived at the scene. He asked Kincaid what had happened and what she had seen. When Shelton began to state what Kincaid told him, Appellant made a hearsay objection and the trial court sustained it. The State responded that

- 7 -

Kincaid's statements to Shelton were admissible under the excited utterance exception to the hearsay rule. Appellant took the witness on *voir dire* and Shelton testified that Kincaid was excited to the point that she was not communicating with him in a normal fashion and was speaking fast. The trial court overruled Appellant's hearsay objection. Shelton then testified that the "motivating event" which caused Kincaid to call the police was that Appellant became upset with Kinser and he chased her around a car with a taser.

Kincaid's statements to Officer Shelton obviously related to the startling event which precipitated her phone call to the police, that is, seeing Appellant chase Kinser with a butcher knife and what Kincaid described as a taser. The record reflects that Kincaid made her statements to Officer Shelton within minutes after the startling event. The fact that Kincaid made her statements to Officer Shelton in response to his general questions asking what had happened and what she had she seen does not make the testimony inadmissible. *See Tejeda v. State*, 905 S.W.2d 313, 316 (Tex.App.--San Antonio 1995, pet. ref'd). Shelton's testimony that Kincaid was excited, not communicating normally, and talking fast provides evidence from which the trial court could have concluded that Kincaid was still dominated by the excitement of the events she had just witnessed. We conclude that the trial court did not abuse its discretion by finding that Kincaid's statements resulted from impulse rather than reason and reflection. *See Amador v. State*, 376 S.W.3d 339, 344 (Tex.App.--Houston [14th Dist.] 2012, pet. ref'd)(holding that robbery victim's statements to police officer, identifying defendant, were admissible under excited utterance exception to hearsay rule, where statements were made shortly after victim was robbed at gunpoint, and other witnesses described victim as being frightened and in an excited

- 8 -

state).

*Any Error is Harmless*

Even if the hearsay statement is not properly admissible as an excited utterance, its erroneous admission is harmless because the same evidence was admitted through other witnesses. The erroneous admission of evidence is non-constitutional error. *Garcia v. State*, 126 S.W.3d 921, 927 (Tex.Crim.App. 2004). An appellate court must disregard the error unless it affected an appellant's substantial rights. TEX.R.APP.P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble v. State*, 330 S.W.3d 253, 280 (Tex.Crim.App. 2010); *Garcia*, 126 S.W.3d at 927. An error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

Kinser testified that Appellant chased her with a knife and taser and she yelled for Kincaid to call 911. Further, Officer Shelton testified that Kinser told him that Appellant chased her with a taser and her statements to him were consistent with the information he received from dispatch. Given that the challenged hearsay statement is cumulative of other evidence admitted at trial, we conclude that any error in the admission of the hearsay was harmless. *See Amador*, 376 S.W.3d at 344-45 (holding that any error in admission of robbery victim's statements to police officer, identifying defendant, under excited utterance exception to hearsay rule was harmless error, where similar statements were testified to by three other witnesses). Issue Five is overruled.

## EXCLUSION OF EVIDENCE

In Issue Six, Appellant asserts that the trial court abused its discretion by excluding evidence related to the complainant's conviction of theft. During direct examination, the prosecutor elicited testimony from Angie Kinser regarding her prior convictions, including a theft of property over $50 but less than $500. She explained during cross-examination that the theft conviction involved the shoplifting of clothing. Appellant questioned her regarding the details of the offense and Kinser stated she had stolen clothing for herself and her daughter. When she did not remember taking an item of men's clothing, Appellant offered into evidence the complaint and information (Defense Exhibit 1) and the probable cause affidavit prepared by the arresting police officer (Defense Exhibit 2), but the State objected that it was improper impeachment because she had admitted to the prior conviction. The trial court sustained the objection.

Rule of Evidence 609 permits the impeachment of a witness with a prior felony conviction or a crime involving moral turpitude provided the trial court determines that the probative value of the evidence outweighs its prejudicial effect. TEX.R.EVID. 609(a). Theft is a crime of moral turpitude. *LaHood v. State*, 171 S.W.3d 613, 620 (Tex.App.--Houston [14th Dist.] 2005, pet. ref d); *Ludwig v. State*, 969 S.W.2d 22, 28 (Tex.App.--Fort Worth 1998, pet. ref'd). The evidence regarding the prior conviction may be elicited from the witness or established by public record, but the details of the offense are inadmissible. TEX.R.EVID. 609(a); *Mays v. State*, 726 S.W.2d 937, 953 (Tex.Crim.App. 1986); *Andrews v. State*, 429 S.W.3d 849, 858 (Tex.App.--Texarkana 2014, pet. ref'd). Given that Kinser admitted the prior conviction on

direct examination, the trial court did not abuse its discretion by excluding the complaint and information (Defense Exhibit 1). Further, Appellant was not entitled to inquire into or introduce evidence regarding the details of the theft conviction. Thus, the trial court did not abuse its discretion by excluding the probable cause affidavit (Defense Exhibit 2). *See Andrews*, 429 S.W.3d at 858 (holding that defendant was permitted to establish that witness had been convicted of a felony or crime of moral turpitude, but he could not inquire as to the circumstances surrounding the offense). Issue Six is overruled.

## INCOMPLETE RECORD ON APPEAL

In Issue Seven, Appellant argues that his right to an adequate record on appeal has been violated because a portion of the reporter's record is missing, certain exhibits have not been included in the reporter's record, and some documents have not been included in the clerk's record.

### *Missing Portion of the Reporter's Record*

An appellant is entitled to a new trial under the following circumstances: (1) if the appellant has timely requested a reporter's record; (2) if, without the appellant's fault, a significant portion of the reporter's record has been lost or destroyed; (3) if the lost or destroyed portion of the reporter's record is necessary to the appeal's resolution; and (4) if the lost or destroyed portion of the reporter's record cannot be replaced by agreement of the parties. TEX.R.APP.P. 34.6(f). The rule's requirement that the appellant show that the missing portion of the record is necessary to resolution of the appeal is a harm analysis. *Routier v. State*, 112 S.W.3d 554, 571 (Tex.Crim.App. 2003); *Issac v. State*, 989 S.W.2d 754, 757 (Tex.Crim.App.

- 11 -

1999).

The official court reporter, Molly Bowers, filed the reporter's record and notified the Court that a portion of the record had not been prepared because a substitute court reporter had advised her that he had lost his notes due to a computer malfunction. We ordered the trial court to conduct a hearing to address whether a portion of the reporter's record had been lost or destroyed. *See* TEX.R.APP.P. 34.6(f). It is undisputed that Appellant timely requested a reporter's record. Consequently, our order required the trial court to determine whether a significant portion of the record was lost or destroyed, whether the missing portion of the record is necessary to the appeal, and whether the record can be replaced by agreement of the parties. At that hearing, the State and Appellant, through his counsel, agreed that the missing portions of the reporter's record were the punishment charge conference, closing arguments during punishment, and the return of the jury's punishment verdict. After a discussion on the record between the parties and the trial judge regarding what had transpired at the charge conference, closing arguments, and the return of the punishment verdict, the trial court determined that the missing portion of the reporter's record is not a significant portion. Both Appellant and the State agreed with this finding. Additionally, the attorney appointed to represent Appellant on appeal advised the trial court that he had reviewed the entire reporter's record and he did not believe that the missing portion of the reporter's record is necessary to the appeal. The trial court entered a written finding that the missing portion of the record is not significant to resolution of the appeal. Finally, the trial court determined that the missing portion of the record could not be replaced by agreement of the parties.

Citing *Kirtley v. State*, 56 S.W.3d 48 (Tex.Crim.App. 2001), Appellant maintains that the missing portion of the reporter's record is necessary to his appeal because he is unable to determine whether his trial attorney is ineffective without the record. In *Kirley*, the appellant was placed on deferred adjudication and the State later moved to adjudicate guilt. *Kirtley*, 56 S.W.3d at 49-50. An appeal was taken but the record of the revocation hearing was lost. *Id.* The appellant claimed that the lost record was necessary to resolution of his complaint that trial counsel was ineffective during the punishment portion of the revocation proceeding. *Kirtley*, 56 S.W.3d at 49-50. The Court of Criminal Appeals concluded that the record was necessary to resolution of the appellant's ineffective assistance of counsel claim.

*Kirtley* is distinguishable because the entire record was lost. In our case, the appellate record includes all of the punishment phase of the trial except for the charge conference, closing arguments, and the return of the jury's punishment verdict. We do not read *Kirtley* as standing for the proposition that a lost portion of a record is always necessary to resolution of an appeal if the appellant claims ineffective assistance of counsel. Each case must be considered on its own facts and a determination must be made whether the missing portion of the record is a significant portion of the reporter's record and whether it is necessary to resolution of the issues presented on appeal.

Appellant contends that the missing portion of the record may demonstrate ineffective assistance of counsel at trial based on two claims of deficient performance: (1) counsel failed to request an accomplice witness instruction; and (2) counsel failed to object to the admission of extraneous offenses and Appellant's prior convictions. Appellant's brief does not include an

- 13 -

issue raising an ineffective assistance of counsel claim. Thus, Appellant's assertion that the missing portion of the record might show ineffective assistance of counsel is nothing more than speculation. The Court of Criminal Appeals has held that Rule 34.6(f)'s requirement that the appellant show the missing portion of the record is necessary to his appeal cannot be based on speculation as to what might have been shown in the record. *See Routier*, 112 S.W.3d at 571 (holding that an appellant's suggestion that jury instructions may have been erroneous, without more, does not make that portion of the record necessary to the appeal). We conclude that Appellant has failed to show he is entitled to a new trial under Rule 34.6(f) due to the loss of a portion of the reporter's record.

*Exhibits Not Included in the Reporter's Record*

Appellant next claims that certain exhibits have not been included in the reporter's record. Prior to filing his brief, Appellant filed a motion to supplement the record with the following items: (1) Lewisville Police Department Lab Request Form, dated 6-17-10; (2) Lewisville Police Department Property/Evidence Report, dated 6-16-10 (report no. 10-06943); (3) memo from the Lewisville Police Department addressing the firing of evidence technicians for misappropriation of evidence; and (4) all of the crime scene photographs taking on June 16, 2010 including those not admitted into evidence at trial. In an order entered on September 11, 2013, we denied Appellant's motion to supplement the record because the crime scene photographs which were admitted into evidence and a lab report are included in the exhibits volume and the remaining items were not admitted into evidence. The appellate court, the trial court, or a party may request that the record be supplemented with items which were part of the

- 14 -

trial record but omitted from the appellate record. *See* TEX.R.APP.P. 34.6(d). This rule does not permit a party to supplement the record with evidence that was not offered or admitted during the proceedings in the trial court.

Appellant additionally argues that the reporter's record should include a transcription of the grand jury testimony. In one of his motions, Appellant asked the Court to order that the record be supplemented to include the transcript of the grand jury testimony. As we noted in our order entered on September 11, 2013, the reporter's record does not reflect that the grand jury testimony was admitted into evidence. The reporter's record cannot be supplemented with matters which were not part of the record in the trial court. *See* TEX.R.APP.P. 34.6(d).

*Items Excluded from the Clerk's Record*

Appellant also complains that the following items were omitted from the clerk's record: (1) a memo from the Lewisville Police Department addressing the firing of evidence technicians for misappropriation of evidence; (2) the police evidence report listing the items tagged and seized at the scene; (3) the jury panel lists, (4) the strike list of the State and defense; (5) juror information forms; (6) the jury's verdict forms; (7) objections to the charge; (8) and special requested jury instructions and rulings by the trial court. Rule 34.5(c) provides that if a relevant item has been omitted from the clerk's record, the trial court, the appellate court, or a party may by letter direct the trial court clerk to prepare and file a supplemental clerk's record containing the omitted item. TEX.R.APP.P. 34.5(c)(1).

With respect to the first two items, Appellant asserts that he was provided this information as part of his discovery requests. Based on Appellant's statements, these two items

- 15 -

were provided to Appellant by the State, and therefore, the items appear to be part of the State's case file. There is nothing, however, to indicate that the first two items were ever included in the records of the trial court clerk. Accordingly, we do not find that these items have been omitted from the clerk's record. Further, Appellant has not shown how the items are relevant to any issue he has presented on appeal.

A supplemental clerk's record containing the jury panel list and the strike lists was filed after Appellant filed his brief. We notified Appellant that the supplemental record had been filed and gave him an opportunity to file a supplemental brief, but none was filed. In our order dated September 25, 2013, we denied Appellant's request to supplement the record with the juror information forms because he failed to make the required showing of good cause. *See* TEX.CODE CRIM.PROC.ANN. art. 35.29 (West Supp. 2014). Regarding Appellant's sixth request, the clerk's record includes the jury verdicts for both guilt-innocence and punishment as required by TEX.R.APP.P. 34.5(a)(4). The record does not reflect that either party made any written objections to the charge or that there were any special requested instructions. We conclude that the clerk's record has been properly supplemented with the relevant items. Issue Seven is overruled.

## IMPROPER JURY ARGUMENT

In Issue Eight, Appellant contends that the prosecutor made several comments during the opening statement and closing argument which were not supported by the evidence. The State responds that Appellant failed to preserve error with respect to any of the prosecutor's arguments. We agree.

*Preservation of Error*

In order to preserve error regarding improper jury argument, a defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the statement if the objection is sustained; and (3) move for a mistrial if the instruction is insufficient to remove the prejudice resulting from the argument. TEX.R.APP.P. 33.1(a); *Cruz v. State*, 225 S.W.3d 546, 548 (Tex.Crim.App. 2007). We have reviewed the record related to each comment and argument identified in Appellant's brief and have determined that Appellant objected to only two of them. Appellant's complaints about the remaining comments and arguments are waived.

During closing argument, the prosecutor invited the jury to consider where the methamphetamine was found, and stated: "And I take you back to the officer's testimony. When they arrived and they looked down the hallway -- and he tells you he can clearly see Robert Carver standing right next to that sink, right next to that sink." The trial court sustained Appellant's objection that the prosecutor had misstated the evidence and the court instructed the jury to "remember the evidence as you received it." Appellant did not move for a mistrial. Thus, Appellant failed to pursue his objection to an adverse ruling and he received all the relief he requested. *See Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004). Nothing is presented for our review.

The prosecutor also discussed the evidence related to Appellant going into the house after the officers cleared it and left on June 20, 2010. When he told the jury that the house had a boarded-up window, Appellant objected that it was not in evidence. The trial court did not expressly rule on the objection but it instructed the jury to "remember the evidence as they

- 17 -

received it." Appellant did not move for a mistrial. As was the case with the prior argument, the trial court granted Appellant all of the relief he requested and Appellant did not pursue his objection to an adverse ruling. *See Young*, 137 S.W.3d at 69. Issue Eight is overruled.

## EXTRANEOUS OFFENSES

In Issue Nine, Appellant argues that the trial court erred by admitting evidence of his prior convictions. Appellant's brief does not provide record references demonstrating where the claimed error occurred, but we understand Appellant to complain about the admission of his prior convictions during the punishment phase. Evidence may be admitted during the punishment phase on any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant. TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(a)(1) (West Supp. 2014). The record demonstrates that Appellant did not object to the admission of the evidence showing his prior convictions. Consequently, Appellant failed to preserve any error related to the admission of this evidence. *See* TEX.R.APP.P. 33.1. Issue Nine is overruled.

Having overruled each issue presented on appeal, we affirm the judgment of the trial court.

January 28, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)

- 18 -