# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00536-CR

---

**Adam Mirelez, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 424TH DISTRICT COURT OF LLANO COUNTY
### NO. CR8289, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury found Adam Mirelez guilty of unlawful possession of a firearm by a felon. *See* Tex. Penal Code § 46.04(c). The jury found true two enhancement paragraphs and assessed sentence at 40 years in prison. *See id.* § 12.42(d). Mirelez contends that the evidence is insufficient to prove that he had actual possession of the firearms or knowledge of their presence. He also contends that the trial court erred at the guilt/innocence phase by admitting hearsay testimony and erred at the punishment phase by admitting testimony speculating that Mirelez was going to shoot someone and a recording of a 911 call; Mirelez contends that this evidence was not probative or was more prejudicial than probative. He contends that, even if no single error is sufficient for reversal, these errors collectively constitute reversible error. We will affirm the judgment.

## I.  Guilt/innocence phase

Mirelez raises two issues with subparts complaining about the admission of evidence and the sufficiency of the evidence to support the guilty verdict.  To provide context for both issues, we will first review the testimony at the guilt/innocence phase.

### A.  Testimony

Llano County Sheriff's Office Patrol Lieutenant Eric Van Pelt testified that he assembled a team to execute a warrant for Mirelez's arrest based on an allegation of an aggravated assault with a deadly weapon that was a parole violation.  Believing the situation might be dangerous, they approached with weapons drawn.  The team encountered people at the property but not Mirelez.  Van Pelt learned that he might be at a small trailer home nearby.  The team knocked at the home but left after receiving no response.  Later that day, they returned to that house based on information received from Chase Parker, Sr. (Senior), who lived in the home.  They knocked and used a patrol car's public address system to urge Mirelez to come out of the house.  After waiting for more than an hour and believing that Mirelez was barricaded inside, they asked for help from a SWAT team.  After another hour-and-a-half, Mirelez came out of the house shirtless and with his hands up.  But Mirelez lowered his hands without permission and reached out to a trampoline before he had been patted down for weapons.  Shortly after demanding that he obey their commands, the SWAT team shot him in the leg twice with beanbag rounds that broke his femur.  After receiving consent to search from Senior, they entered the home and found pistols underneath the mattress in the one bedroom.  They found a silver-over-black semiautomatic Smith and Wesson handgun and a silver Ruger handgun with black grips.  They also found magazines and ammunition for the pistols.

Van Pelt testified about a picture of Mirelez holding pistols that Van Pelt believed were the weapons seized in the search. Van Pelt said that he could not be certain the pistols were the same because he could not see the serial numbers in the photo, but testified about visible characteristics of the guns that led him to believe they were the same guns. On cross-examination, he testified that he did not know when the photo was taken, could not prove it was not altered, and had not charged Mirelez for possession of the guns at the time of the photo.

Llano County Deputy Jeffrey Johnston testified that he met with Senior on the day of the arrest and that Senior did not seem nervous. Johnston testified that Senior has never lied to him or steered him the wrong way despite being a felon. Johnston testified that the information Senior gave about Mirelez's whereabouts and the presence of two pistols in the bedroom of the home turned out to be truthful and accurate. Johnston said he saw people at the first home ordered onto their knees. He saw only Mirelez exit the second home. Johnston testified that the combined events took about five-and-a-half hours.

Former Llano County Sheriff's Office Patrol Sergeant Les Hartman testified that he turned off the power to the trailer home hoping that the heat would encourage any occupant to leave. He checked an outlying shed to see if Chase Parker, Jr. (Junior), who was known to live on the property, might be there. Hartman said he put his ear to the outside wall of the home and heard movement in the bedroom. He described the faint sound as like the turning of a screw with a screwdriver.

Junior testified that he lived on the same property as the trailer in which Mirelez was found. He knew Mirelez and testified that Mirelez would occasionally visit Senior but that Mirelez did not to his knowledge sleep at Senior's trailer. Junior also testified that he had seen Mirelez on the property before the standoff on that same day. Junior admitted that he had

3

pending charges for unlawful possession of a firearm and possession of a controlled substance but testified that the State had not offered him any plea agreement for those charges and that he was testifying of his own free will. Junior testified that he had seen Mirelez carrying around two pistols in a shoulder holster like the one in evidence. He said one pistol was black and silver and could not recall the other. Junior said that the pistol in evidence appeared to be the weapon he had seen Mirelez carry. Junior said he recalled that one of the pistols had an extended magazine. Junior testified that Senior does not like firearms and that neither he nor Senior own any pistols. Junior testified that the guns seized were Mirelez's guns. In an interview at the sheriff's office, Junior said that Mirelez told him that he (Mirelez) had put firearms in the back room of the house.

On cross-examination, Junior admitted he was convicted of the felony offense of assaulting a family member by impeding breath or circulation. He was aware that possession of a firearm would be a state and federal felony—one for which he was then charged and facing up to 99 years in prison. He testified that he expected nothing for his testimony. He testified that he had contact with Senior, but when confronted with a previous statement that he had previously told the defense attorney that he "didn't know where his dad lives nor does he have any contact with him," Junior confirmed that he had not had any contact since going to jail. Junior said his father had been evicted from the site of the pistol seizure and that he did not know where Senior had moved. In a recorded interview, Junior had described one of the guns as a Llama .380 and said, "I think" but also that "I know it was a 380." In the interview, he described the second pistol as "a 40." Junior acknowledged that a .380, a .40, and a 9 millimeter are different types of guns. Junior also testified that Mirelez offered to pay him for his testimony but admitted that Mirelez was not offering to free him from jail or return seized property.

4

Bryan Strong, a Texas Department of Public Safety crime laboratory forensic scientist, testified that many factors affect whether contact with a gun leaves a detectable latent print that can be examined, including the condition of the person's hands and the surface of the pistol. The grooved surfaces of the pistols would not retain a usable print, but smooth flat metal surfaces could. He found no suitable prints on the items seized during Mirelez's arrest. He testified that he had read an article that reported that usable fingerprints were found on firearms about 10% of the time and on ammunition less than 1% of the time; he speculated that magazines might be more likely to retain usable fingerprints. He tested the pistols, magazines, a holster, a tactical light, and 54 cartridges seized and found no prints on any of the items. At the end of the cross-examination, the following exchange occurred:

Q. Just closing out, are you familiar with Locard's Exchange Principle?

A. Yes, I am.

Q. Locard, he's one of the foundational scientists who created forensic science; that's correct?

A. His name is well known in the trace discipline.

Q. And would it be accurate to say that Locard's Principle is every contact leaves a trace?

A. That is the slogan that he is known for.

Strong's supervisor, Meghan Blackburn, testified that there is generally a 50% chance to find a friction ridge detail on an item. She testified DPS's DNA section would not test for DNA on weapons in a felon-in-possession case. She also testified that the processes for testing for fingerprints compromised or inhibited DNA evidence.

5

Scott Green testified that he had researched criminal history and confirmed that Senior has a felony DWI conviction. He also testified that a felon is entitled to own a weapon five years after either his parole lapses or he is released from supervision under state law. He said he understood that the ban extended for life under federal law, but did not know. The trial court declined to take judicial notice of federal law in an exchange set forth in detail below.

**B.      Challenged admission of testimony**

By his second ground of error, Mirelez complains of the admission of testimony in which Johnston vouched for Senior's truthfulness. One witness's direct opinion as to another witness's credibility is generally inadmissible because it does more than assist the trier of fact to understand the evidence—it "decides" the issue for the jury. *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993). Mirelez complains of this exchange that occurred during Mirelez's cross-examination of Johnston about what information caused him to believe that Mirelez had weapons in the home:

Q. And you—did you know those things from your personal knowledge?

A. That the handguns were in the house?

Q. Yes.

A. Not until I talked to Chase Parker, Senior.

Q. So you don't really know exactly if he was telling the truth, correct?

A. Every contact I've had with him, he's never steered me the wrong way or lied to me.

Mirelez did not object to the testimony or ask for it to be struck. On appeal, Mirelez contends that this testimony created prejudice without probative value because his statement concerned

6

hearsay testimony whose speaker (Senior) could not be confronted because he did not testify. He contends that Senior's out-of-court statement was testimonial; violated *Crawford v. Washington*, 541 U.S. 36 (2004); went to the heart of the charge; and was improperly vouched for by Johnston.

Mirelez waived both aspects of this alleged error. To preserve error for appellate review, the complaining party must make a timely and specific request, objection, or motion; and the trial judge must either have ruled on the request, objection, or motion (expressly or implicitly), or have refused to rule and the complaining party have objected to that refusal. Tex. R. App. P. 33.1(a); *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010) (party must timely object to violation of Confrontation Clause). Mirelez asked the question that elicited the response. He did not object to any improper vouching or a Confrontation Clause issue with regard to Senior's statements. He waived error in the admission of this testimony by not timely objecting or otherwise bringing the issue to the trial court's attention.

We overrule ground two.

## C. Sufficiency of the evidence

In his first ground for review, Mirelez contends that the evidence was insufficient to prove that he had actual possession of the firearms or knowledge of their presence. Mirelez claims that a key witness was not credible and that the evidence was otherwise insufficient to prove possession.

In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). The trier of

fact is the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence. *Braughton*, 569 S.W.3d at 608; *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is the exclusive judge of the facts"). We are not to reevaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *Braughton*, 569 S.W.3d at 608; *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). We determine whether the necessary inferences made by the trier of fact are reasonable based upon the cumulative force of all the evidence. *Braughton*, 569 S.W.3d at 608. Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013).

We assess the sufficiency of the evidence against the elements of the offense as defined by the hypothetically correct jury charge. *Braughton*, 569 S.W.3d at 607-08. A person who has been convicted of a felony commits an offense if he possesses a firearm after conviction and before the fifth anniversary of the person's release from confinement following either conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; this offense is a third-degree felony. Tex. Penal Code § 46.04(a).

To prove that a defendant possessed a firearm, the State must show that appellant knew of the firearm's existence and that he exercised actual care, custody, control, or management over it. *Grantham v. State*, 116 S.W.3d 136, 143 (Tex. App.—Tyler 2003, pet. ref'd); s*ee also* Tex. Penal Code § 1.07(39) (defining possession). The evidence may be direct or circumstantial, but the accused's connection with the firearm must be more than merely fortuitous. *Davis v. State*, 93 S.W.3d 664, 667 (Tex. App.—Texarkana 2002, pet. ref'd). The State need not prove that the accused had exclusive possession of the firearm; joint possession is sufficient to sustain a conviction. *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd) (citing *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986) (involving possession of controlled substance)). When there is no evidence the actor was in exclusive control of the place where the firearm was found, the State must offer additional, independent facts and circumstances affirmatively linking him to the firearm. *See id.* (citing *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (involving possession of controlled substance)); *Grantham*, 116 S.W.3d at 143. The purpose of affirmatively linking the accused to the firearm is to protect innocent bystanders from conviction based solely on their fortuitous proximity to the firearm. *See Poindexter*, 153 S.W.3d at 406.

When deciding whether sufficient affirmative links exist, appellate courts consider facts such as the following:

> whether the firearm was in plain view, whether appellant owned the residence where the firearm was found, whether he was in close proximity to the firearm and had ready access to it or whether it was found on him, whether he attempted to flee, whether his conduct indicated a consciousness of guilt, whether he had a special connection to the firearm, whether the firearm was found in an enclosed space, and whether he made incriminating statements.

*Smith*, 176 S.W.3d at 916 (citations omitted). "No set formula of facts exists to dictate a finding of affirmative links sufficient to support an inference of knowing possession of contraband," and "[i]t is the 'logical force' of the factors, not the number of factors present, that determines whether the elements of the offense have been established." *Id.* The absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex. Crim. App. 1976).

Mirelez contends that the evidence of possession was insufficient because of the lack of physical evidence—fingerprints or other trace evidence—and because no rational juror would find Junior's testimony regarding Mirelez's possession credible. Within that issue, Mirelez complains that the trial court's refusal to take judicial notice of federal law deprived the jury of information that would have shown Senior's motive to lie about who possessed the weapons.

The law and the record do not permit us to override the jurors' apparent choice to believe Junior. *See Braughton*, 569 S.W.3d at 608. Mirelez has not shown that the absence of fingerprints or other trace evidence created a reasonable doubt as to his guilt. The evidence included various factors that might diminish the likelihood of finding usable prints and established that no DNA testing was available because DPS labs will not test for DNA for the crime charged; evidence also established that fingerprint-testing techniques rendered DNA testing unhelpful. Further, the jury might reasonably have inferred that the last person possessing the weapons wiped away fingerprint evidence—for example, Mirelez could have done so during the standoff when he was alone with the weapons. These factors explain why Locard's Exchange Principle and the absence of detectable fingerprints do not create reasonable doubt of Mirelez's guilt in this case.

Neither did the trial court's refusal to take judicial notice of federal law show error or an improper limit on Mirelez's attack on Junior's (or Senior's) credibility. Mirelez argues that the court's refusal prevented him from showing that federal law on possession of weapons by a felon gave the Parkers a reason to inculpate Mirelez for possession of the firearms and to lie about their culpability. The following relevant exchange occurred between defense counsel and the trial court:

> MR. ROGERS: Your Honor, I'd move for a judicial recognition of U.S. Federal law in this case.
>
> THE COURT: I'm not going to recognize what that law is. I'm—frankly, I didn't practice in federal court, so I'm not willing to do that.
>
> MR. ROGERS: May we approach, Your Honor?
>
> THE COURT: Come on up.
>
> (At bench)
>
> MR. ROGERS: Defense is entitled to get in U.S. laws. I think judicial admission is required.
>
> THE COURT: Then do it. Do it the right way.
>
> MR. ROGERS: Okay.
>
> THE COURT: If you want to do it the right way, then I'm not trying to prevent you from doing it, but I'm not going to recognize something. Do it the right way.
>
> MR. ROGERS: Thank you.
>
> (Open court)
>
> MR. ROGERS: No further questions, your Honor.

Texas Rule of Evidence 202 requires courts to take judicial notice of federal law "if a party requests it and the court is supplied with the necessary information." Tex. R. Evid.

11

202(a), (b). The court's decision of whether to take judicial notice is reviewed for an abuse of discretion. *See Davis v. State*, No. A14-92-00661-CR, 1993 WL 16011, at *2 (Tex. App.—Houston [14th] Dist. Jan. 28, 1993, no pet.) (mem. op.) (not designated for publication); *see also Daugherty v. S. Pac. Transp. Co.*, 772 S.W.2d 81, 83 (Tex. 1989); *see generally McQuarrie v. State*, 380 S.W.3d 145, 152 (Tex. Crim. App. 2012) (using civil cases as persuasive authority regarding rules of evidence). In *Daugherty*, a civil case, the Texas Supreme Court held that, while Texas courts may take judicial notice of federal law in the absence of a pleading of a specific statute, Rule 202 does not *require* that a court take judicial notice of federal law. *Daugherty*, 772 S.W.2d at 83. "Rule 202 requires the moving party to furnish sufficient information to the trial court for it to determine the foreign law's applicability to the case . . . ." *Id.* "The determination of compliance with these requirements is within the discretion for the trial court." *Id.* An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). In other words, we may not reverse the trial court's ruling unless the "decision falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016). An evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 125-26 (Tex. Crim. App. 2006).

Although on appeal Mirelez specifies that the trial court refused to take judicial notice of 18 U.S.C. § 922(g), he does not show where in the record he provided that citation of a specific statute to the trial court. While Rule 202 does not specify what information must be supplied to support taking judicial notice, we conclude that the court did not abuse its discretion

12

by declining to take judicial notice of "U.S. Federal law" concerning possession of weapons by a felon without more information about the law than that broad request. *See* Tex. R. Evid. 202; *see also* Tex. R. App. P. 33.1(a)(1(A) (providing that as prerequisite for presenting complaint for appellate review, record must show complaint made to trial court by timely request, objection, or motion stating grounds for ruling sought with sufficient specificity to make court aware of complaint).

We conclude that the record sufficiently demonstrates affirmative links for a rational jury to find beyond a reasonable doubt that Mirelez possessed the weapons. Mirelez was alone in the small home for hours before the seizure, declined to respond for hours after contact by law enforcement, and was heard in the bedroom where the weapons were found. Law enforcement easily found the weapons under a mattress. The record contained a photo of Mirelez possessing similar-looking guns. His arguments that the photo was not conclusive of what he possessed when and that he might have feared interacting with police after his family's experience during the earlier confrontation are within the jury's purview to consider and reject. Junior's testimony that he had seen Mirelez with the guns—albeit countered by cross-examination showing he was not certain about identifying guns—and Senior's report that Mirelez had the guns in the trailer lent further support to the jury's finding that Mirelez possessed the weapons.

We overrule issue one.

## II.     Punishment phase

By his third ground of error, Mirelez complains that the court erred by admitting speculative and prejudicial evidence at the punishment phase concerning a separate incident in

which Mirelez allegedly threatened Armon Tyler. He complains about the admission of Junior's testimony concerning Mirelez's intent during the incident and the admission of a recording of Tyler's 911 call reporting the confrontation.

### A. Admission of Junior's testimony about intent to shoot

Mirelez complains that Junior's testimony that Mirelez was going to shoot Tyler was highly prejudicial and not relevant to the charge of possession of a firearm in the trailer. Junior testified that about a month before the incident at issue here, he and Tyler were working on Tyler's car in the same location as the first attempt to arrest Mirelez occurred. Mirelez's niece arrived, and eventually she sat in a car's driver seat with Tyler in the passenger seat and Tyler's child in the backseat.[1] Junior testified that he saw Mirelez approach the car holding a gun at Tyler. Mirelez asserts that the trial court erred by admitting testimony in response to the final question of Junior by the State in this sequence:

Q. What did Armon do once he saw that the gun was pointed at him? Do you recall if he did anything?

A. Yeah, he pulled the baby in front of him.

Q. And so when you say he pulled a baby in front of him, do you mean took out of a backseat?

A. Yes, sir.

Q. And do you think that if Armon hadn't taken that action he would have been shot by the defendant?

A. Yes, sir.

[MIRELEZ'S ATTORNEY]: This calls for speculation, Your Honor.

THE COURT: All right.

---

[1] Later testimony showed that Mirelez's niece was married to Tyler.

14

[PROSECUTOR]: He's going to give his opinion about what he saw.

THE COURT: It's fine. Go ahead.

Mirelez asserts that this testimony was highly prejudicial.

Mirelez's objection to this testimony was not timely. An objection is considered timely if it is made before the witness answers and the testimony is received into evidence. *Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995). If an appellant "fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Id*. This complaint was waived.

Even if the objection preserved the issue, we would be unable to conclude that the trial court erred because the trial court could have acted within its discretion by determining that the testimony at issue was, as the State argues, not speculation but Junior's opinion from his knowledge of the participants and observations on the scene. *See Hooper v. State*, 214 S.W.3d 9, 15-16 (Tex. Crim. App. 2007) (distinguishing speculation from inference); *see also* Tex. R. Evid. 701 (providing that lay witnesses can testify to opinion rationally based on witness's perception and helpful to clearly understanding witness's testimony or determining fact in issue). Further, a broader range of evidence is relevant at punishment than at guilt/innocence because the goal is determination of the appropriate punishment rather than any fact of consequence. *Miller-El v. State*, 782 S.W.2d 892, 895-96 (Tex. Crim. App. 1990). To be excludable for prejudicial effect, the probative value of evidence must be substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. We conclude that the trial court did not abuse its discretion by concluding that this testimony was admissible at the punishment phase.

## B. Admission of Tyler's 911 call excerpts

Mirelez complains that the admission of the recording of excerpts of Tyler's 911 call regarding the incident Tyler described was prejudicial and violated his right to confront Tyler, who did not testify. In an eight-second excerpt played, the caller identifying himself as Tyler reported, "There's a guy who just-just pulled a gun out on me on, uh, his name's, uh, street, uh, his name's Adam, uh, he pulled a gun and tried to shoot at me while I got my son in the car with me." In a four-minute-plus excerpt, the 911 operator asked for clarification of whether Mirelez shot at him or just pointed at him, and Tyler responded, "He pointed the gun at me." Later, Tyler said, "He just shot at—I mean, he just pulled a gun on me." Still later, Tyler said Mirelez shot at him, which the dispatcher relayed to the responding officers. After clarifying where the incident occurred, where Tyler and Mirelez were, and Mirelez's description, the dispatcher urged Tyler to leave the area of the incident and arranged for Tyler to meet officers elsewhere.

The State argued that the 911 call was within the excited-utterance exception to hearsay. *See* Tex. R. Evid. 803(2). Mirelez contends that there was no excitement in Tyler's utterances and that the evidence was not probative of the crime charged and likely prejudiced the jury. A statement falls within the excited-utterance exception if (1) the statement is the product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous, (2) the state of excitement so dominates the declarant's mind that there is no time or opportunity to contrive or misrepresent, and (3) the statement relates to the circumstances of the occurrence preceding it. *Amador v. State*, 376 S.W.3d 339, 344 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). The record does not show that the trial court

abused its discretion by concluding that the 911 call was an excited utterance and admissible as an exception to hearsay.

We also conclude that the admitted statements in the 911 call were not barred by the Confrontation Clause because they were not testimonial. The statements were made under circumstances objectively indicating that the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency.[2] *See Davis v. Washington*, 547 U.S. 813, 827-28 (2006). The Supreme Court held in *Crawford* that the Confrontation Clause of the Sixth Amendment's guarantee of the right to be confronted with witnesses against him bars admission of testimonial statements of a witness who does not appear at trial unless he was unavailable to testify and the defendant had an opportunity for cross examination. *Crawford*, 541 U.S. at 53-54. But, while the inadmissible answers to the interrogation in *Crawford* took place hours after the events she described occurred, the statements in the 911 calls in *Davis* occurred as the caller sought help against a bona fide physical threat. *Id.* at 827. The 911 operator in *Davis* determined that the caller was involved in a domestic disturbance with her former boyfriend. *Id.* at 817. The caller reported that her assailant was "here jumpin' on me again." The operator asked and Davis told her about who the assailant was and whether he had weapons or had been drinking. *Id.* at 817-18. The questions asked and answered—including efforts to establish the identity of the assailant—were necessary to help dispatched officers know whether they would

---

[2] Despite our conclusion that the trial court did not err by allowing the statements as an excited utterance, we must also address the Crawford Confrontation Clause issue because "[t]he constitutional requirement that a testimonial statement to be subject to cross-examination in criminal cases 'does not evaporate when testimony happens to fall within some broad modern hearsay exception, even if the exception is sufficient in other circumstances.'" *Davis v. State*, 169 S.W.3d 660, 667-68 (Tex. App.—Austin 2005), *aff'd*, 203 S.W.3d 845 (Tex. Crim. App. 2006) (in part quoting Crawford, 541 U.S. at 56, n. 7). Though a testimonial statement may be an excited utterance, that indicator of reliability is irrelevant to whether the extrajudicial statement is testimonial under the Confrontation Clause. *Id.* at 668.

17

be encountering a violent felon. *Id.* at 827. Unlike the calm responses to the station-house interview in *Crawford*, the answers in the 911 call in *Davis* were frantic in an environment that was not tranquil or safe. *Id.* at 827. The Supreme Court concluded that these distinctions meant that, unlike the interview responses in *Crawford*, the caller's statements in the 911 call in Davis were not testimonial. *Id.* at 828. The Supreme Court acknowledged that a non-testimonial emergency call could evolve into a testimonial statement once the emergency ended, as when the assailant in *Davis* drove away from the home where the assault occurred. *Id.* at 828-29.

Mirelez urges that the evidence was inadmissible under *Hammon*, the companion case decided with *Davis*. *Id.* at 819. Police responding to a reported domestic disturbance found a woman alone on a house porch appearing somewhat frightened but telling them nothing was the matter. *Id.* She gave them permission to enter the house where they found a heating unit with a broken glass front. *Id.* Her husband was in the kitchen and admitted that they had had an argument that never became physical and that everything was fine. *Id.* He attempted to participate in his wife's conversations with police and became angry when kept apart from her. *Id.* Mrs. Hammon filled out a battery affidavit, which prosecutors offered at trial when she declined to appear. *Id.* The trial court admitted the affidavit and found Mr. Hammon guilty of domestic battery and of violating his probation. *Id.* The Indiana Supreme Court affirmed, concluding that Mrs. Hammon's affidavit was an excited utterance and non-testimonial because it was not given in significant part for purposes of preserving it for potential future use in legal proceedings. *Id.* (citing *Hammon v. State*, 829 N.E.2d 444, 456-58 (Ind. 2005), *rev'd and remanded sub nom. Davis*, 547 U.S. at 830-32). The United States Supreme Court reversed, concluding that the interrogation that produced the challenged statement was part of an

investigation into past conduct, as in *Crawford*. *Id.* at 829. There were no ongoing arguments or immediate threat to the interview subject. *Id.* at 830.

We review the admissibility of the challenged evidence with a hybrid standard: we defer to a trial court's determination of historical facts and credibility, and review de novo whether the statement was testimonial or non-testimonial under the Constitution. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006). De novo review is appropriate because the legal ruling of whether a statement is testimonial is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant; we are as well-equipped to decide that issue as the trial judge was. *Id.* at 742-43.

We conclude that Tyler's statements on the 911 call were more like those in *Davis* than those in *Hammon*. Here, the caller was in his car, gave agitated answers, and was reporting that an armed man who had recently threatened him was somewhere nearby. As in *Davis, but* unlike in *Hammon*, the reporting person was not in police protection and the reported threatening person was not under police observation or control. The 911 operator asked questions that provided information to instruct the responding officers whom they were seeking, his description, and any type of threat he might pose to the officers or others. The 911 operator also sought to ensure the caller's safety by directing him to leave the area where he believed the armed man to be. We conclude that Tyler's statements on the recording were not testimonial and that the trial court did not err by admitting them over the stated objections.

We overrule ground three.

## III.    Cumulative error

By his fourth ground, Mirelez contends that, even if we found the asserted errors harmless individually, their cumulative effect constitutes reversible error. The doctrine of cumulative error provides that the cumulative effect of several errors can, in the aggregate, constitute reversible error, even though each individual error may be harmless. *Barron v. State*, 629 S.W.3d 557, 564 (Tex. App.—Eastland 2021, pet. ref'd). The doctrine applies only if the alleged errors complained of actually constitute error. *Id.* (citing *Gamboa v. State*, 296 S.W.3d 574, 584 (Tex. Crim. App. 2009)). Because we have concluded that Mirelez has not presented grounds showing error that was preserved for our review, we conclude there is no cumulative error requiring reversal. We overrule ground four.

## IV.    Conclusion

Having overruled all the grounds presented as error, we affirm the judgment.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:   June 27, 2024

Do Not Publish